**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**WESTERN DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | **Chapter 11** |
| **Community Eco Power, *et al.*,**[1] ) | |
| ) | **Case No. 21-30234** |
| ) | |
| **Debtor.** ) | **(Jointly Administered)** |
| ) | |

**LIMITED OBJECTION TO MOTION FOR AUTHORITY TO DISBURSE CERTAIN PROCEEDS FROM THE SALE OF CERTAIN ASSETS OF COMMUNITY ECO SPRINGFIELD, LLC TO PAY CERTAIN ADMINISTRATIVE EXPENSE CLAIMS**

The Official Committee of Unsecured Creditors (the "Committee") of Community Eco Power, LLC ("CEP"), Community Eco Springfield, LLC ("CE Springfield"), and Community Eco Pittsfield, LLC ("CE Pittsfield" and, collectively with CEP and CE Springfield, the "Debtors"), the debtors and debtors in possession in the above-captioned chapter 11 cases, by and through its undersigned counsel, files this limited objection to the *Motion for Authority to Disburse Certain Proceeds From the Sale of Certain Assets of Community Eco Springfield, LLC to Pay Certain Administrative Expense Claims* [Dkt. No. 551] (the "Motion").

**LIMITED OBJECTION**

1. The Motion seeks authority to make approximately $1.053 million in disbursements for alleged administrative expenses (the "Disbursements"), with a portion of such expenses to be funded from Sale Proceeds.[2] A schedule of Disbursements is attached to the proposed order filed with the Motion as **Exhibit A** (the "Disbursement Schedule").

---

[1] The last four digits of Community Eco Power, LLC's federal taxpayer identification number are 5513. The last four digits of Community Eco Springfield, LLC's federal taxpayer identification number are 4363. The last four digits of Community Eco Pittsfield, LLC's federal taxpayer identification number are 8358. The principal place of business for the Debtors is 500 Hubbard Avenue, Pittsfield, Massachusetts 01201, and the Debtors' mailing address is P.O. Box 510, Amesbury, Massachusetts 01913.

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

2.   As a basis for the Motion, the Debtors contend that the Disbursements should be authorized as ordinary course of business expenses under section 363(b)(1) of the Bankruptcy Code based on the assertion that the Debtors have established a valid business purpose for the Disbursements at this juncture in the case. Before turning to the substance of the issue, the Committee notes that when the debtor is liquidating, as is the case here, no particular deference should be paid to its management's judgments regarding the liquidation, and the Committee's views should carry at least equal, if not superior weight. *In re Commercial Mortgage and Finance Co.*, 414 B.R. 389, 394 (Bankr. N.D. Ill. 2009) (*citing In re S.N.A. Nut Co.*, 186 B.R. 98, 105 (Bankr. N.D. Ill. 1995).

3.   With that in mind, the Committee fundamentally does not object to payment of administrative expenses and has no reason to doubt the Debtors' representations that the Disbursements would qualify as such. However, the Committee requires additional information regarding the attribution of any or all of the Disbursements among the Debtors' estates and the repayment ability of such estate. Accordingly, the Committee believes that a short continuance to permit further discussion among the parties would be beneficial prior to a final hearing on the Motion.[3]

4.   Shortly before the objection deadline, the Debtors provided a report that appears to contain explain allocations of Disbursements identified as "Uses" on the Disbursement Schedule among the Debtors' estates. While this information may address some or all of the Committee's concerns, the Committee files this limited objection out of an abundance of caution because it has

---

[3] Last week's sale hearings required greater attention than originally expected and, in the Committee's view, impeded discussion of the Motion because it was not the most pressing issue.

not yet had an opportunity to evaluate the new information or understand the repayment ability of each affected estate.[4]

5.  To highlight the Committee's concern, based on the most recent set of monthly operating reports, Community Eco Power, LLC ("CE Power") reported total assets of $1.74 million and *post-petition* payables (excluding taxes) of $1.877 million. [Dkt. No. 512.] This same monthly operating report reflected negative net equity of CE Power totaling -$7.46 million. Thus, as of the end of March, CE Power appears to have been administratively insolvent – and the $2 million of scheduled unsecured claims would have no chance of recovery.

6.  At the same time, Community Eco Springfield, LLC ("CE Springfield") and Community Eco Pittsfield, LLC ("CE Pittsfield") both reported small amounts of net equity in their respective monthly operating reports. [Dkt. Nos. 513, 514.] Presumably, the minor amounts of net equity reported by CE Springfield and CE Pittsfield did not reflect the value of sale proceeds, as the sales had not yet occurred and monthly operating reports provide lagging indicators of debtors' financial health.

7.  The Committee has reviewed and considered the Disbursements against this backdrop and provides the following comments.

8.  The line item for "Payroll/PTO/Benefits" is the largest at $427,558. The Committee does not have a reason to doubt that this should be paid—and likely at the time employees separate from their employment with each of the Debtors. *E.g.* M.G.L. c. 149, § 148 (requirement payment in full to an employee of wages, including for the value of paid time off, on

---

[4] Relatedly, and as a preview of an issue that could develop during plan formulation, the Committee also has not yet determined whether unsecured creditors would benefit from each estate have its assets, liabilities, and administrative expenses administered separately or on a consolidated basis – or which approach most closely resembles pre-petition reality for creditors. This is another reason why understanding the allocation of Disbursements among the estates would be helpful.

3

the first regular pay day following termination of employment); M.G.L., c. 149, § 150 (providing remedial mechanisms for violation of § 148, including indictment by the attorney general or a private right of action that could include, among other things, treble damages and reasonable attorneys' fees); M.G.L. § c. 41, § 111E (requiring payment to an employee for unused vacation time). Yet the Disbursement Schedule does not indicate the amount of "Payroll/PTO/Benefits" to be paid for each estate and whether any owners of CE Power, who are indirect owners of CE Springfield and CE Pittsfield, will be included among parties receiving payment and, if so, to what extent.[5] While the Committee has no objection to non-insiders receiving wages and benefits to which they are entitled (and, subject to more information, may not object as to insiders), the Committee requires additional information regarding this particular issue (and is reviewing information provided shortly before the objection deadline).

9. The next two line items relate to payments to counsel for the Debtors' and the Committee. The Committee does not take a position on whether such payments should be made at this time but notes that professionals have not been paid since December and have, as a result, financed this case to the benefit of other parties who might have had smaller recoveries without successful sales achieved as a result of estate and Committee professionals playing their respective roles in this case.[6]

10. The Committee understands that "ACS" refers to a contractor who has provided ash removal services to the Debtors and is important to the decommissioning process. The

---

[5] The Debtors' payroll motion [Dkt. No. 7] indicates that CE Power had six of its own employees with three of them also being owners of CE Power, making them indirect owners of CE Springfield and CE Pittsfield. The Committee has not determined its position on whether payments to such individual owners is appropriate at this time because the amount of such payments has not been disclosed with respect to the Disbursements.

[6] The Committee has not raised this issue in prior hearings regarding use of cash collateral because it pertained primarily to professionals. Presently outstanding fees to counsel for the Committee exceed the amount in the proposed Disbursements. In the event that the Court authorizes such disbursements, then the Committee requests that $100,000.00 be disbursed to counsel for the Committee to be held pending further order of the Court.

Committee further understands that the Debtors have paid ACS in the ordinary course of business during the case. Thus, while the Committee requests additional information regarding allocation of this expense among the estates, the Committee has no objection to its being made provided any estate benefiting from the payment has the ability to repay CE Springfield.

11. The remaining proposed Disbursements are relatively small in comparison to the prior items, but, again, there is no allocation provided to indicate how much is attributable to each estate and whether any of the Disbursements would be made for the benefit of an estate that will be unable to repay such obligation – the primary risk being as to CE Power.

12. Lastly, any order granting the Motion should contain certain protections that appear to be generally consistent with the Motion, including the following:

- Language stating that all rights of parties with respect to the Sale Proceeds, and priorities of interests in the Sale Proceeds, are reserved and shall not be altered by virtue of making the Disbursements.

- Language stating that in the event that the Sale Proceeds are used to repay claims against a Debtor other than Springfield, then the Debtors will track those payments and the accompanying intercompany claims, which will be repaid pursuant to further orders or the forthcoming plans, as is stated in the Motion.

- Clarification that, to the extent any post-petition payable on account of which a Disbursement is made is not an ordinary course administrative expense, nothing in the order shall be deemed to allow the post-petition claim as an administrative expense. Allowance of any non-ordinary course of business administrative expense should be subject to further order of the Court.

Based on the foregoing, the Committee respectfully requests that the Court continue the hearing on the Motion to a date later this month in order to provide the parties additional time to confer now that the sale hearings have concluded and, in the event the Court is inclined to grant the Motion, that the Court order further disclosure consistent with this limited objection and provide protections set forth in the immediately preceding paragraph.

Dated: May 11, 2022

Respectfully submitted,

*/s/ Andrew C. Helman*
Andrew C. Helman (BBO# 679155)
DENTONS BINGHAM GREENEBAUM LLP
One Beacon Street, Suite 25300
Boston, Massachusetts  02108
(207) 619-0919
andrew.helman@dentons.com

　　　　　*and*

April Wimberg (*pro hac vice*)
Christopher B. Madden (*pro hac vice*)
Gina Young (*pro hac vice*)
DENTONS BINGHAM GREENEBAUM LLP
3500 PNC Tower, 101 S. Fifth Street
Louisville, Kentucky  40202
(502) 587-3719
april.wimberg@dentons.com
chris.madden@dentons.com
gina.young@dentons.com

*Counsel to the Official Committee of Unsecured Creditors of Community Eco Power, LLC, et al.*

6

**CERTIFICATE OF SERVICE**

    I hereby certify that, on May 11, 2022, a copy of the foregoing document was filed electronically via the Court's CM/ECF system, causing notice of this filing to be sent to all parties requesting and receiving electronic notification through the Court's CM/ECF system.

    */s/ Andrew C. Helman*
    Andrew C. Helman
    *Counsel to the Committee*