# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## WESTERN DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| Community Eco Power, LLC, *et al.*,[1] | Case No. 21-30234 |
| Debtors. | (Jointly Administered) |

## ORDER CONFIRMING COMMUNITY ECO POWER, LLC, COMMUNITY ECO SPRINGFIELD, LLC, COMMUNITY ECO PITTSFIELD, LLC AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' JOINT PLAN OF LIQUIDATION DATED DECEMBER 7, 2022

With the *Community Eco Power, LLC, Community Eco Springfield, LLC, Community Eco Pittsfield, LLC and the Official Committee of Unsecured Creditors' Joint Plan of Liquidation Dated December 7, 2022*  [Dkt No. 863] (the "Plan"), having been filed by the Plan Proponents (all capitalized terms used herein shall have the meaning ascribed to such terms in the Plan, unless otherwise defined herein); and this Court having conducted a hearing (the "Hearing") on confirmation of the Plan; and this Court having considered the arguments of counsel for the Plan Proponents, the evidence at the Hearing (if any), and the materials filed in support of the Plan; and this Court having considered the Plan; and with this Court finding that the deemed consolidation proposed in the Plan is in the best interests of Creditors based solely on the unique circumstances of the Chapter 11 Cases, including, among other factors, the Creditors' Committee's support for the Plan and role as a Plan Proponent, the global settlements between the Plan Proponents

---

[1] The last four digits of Community Eco Power, LLC's federal taxpayer identification number are 5513.  See 11 U.S.C. § 342(c)(1).  The last four digits of Community Eco Springfield, LLC's federal taxpayer identification number are 4363.  See id.  The last four digits of Community Eco Pittsfield, LLC's federal taxpayer identification number are 8358.  See id.  Prior to the sale of substantially all of the assets of two of the three Debtors, the principal place of business for the Debtors was 500 Hubbard Avenue, Pittsfield, Massachusetts 01201.  The Debtors' mailing address is P.O. Box 510, Amesbury, Massachusetts 01913.

and certain significant Creditors contained in the Plan that are inextricably intertwined with the structure of the Plan, and the lack of any objection by Creditors or other parties in interest to such structure; and with the U.S. Trustee neither consenting to nor objecting to deemed consolidation based on the unique circumstances of the Chapter 11 Cases; and with all objections (if any) to the Plan having been withdrawn or overruled; and with a copy of the Plan attached hereto as **Exhibit A** and incorporated herein by reference; and with the Court having determined after adequate notice and opportunity for a hearing that the requirements set forth in 11 U.S.C. § 1129(a) and § 1129(b) (as applicable) have been satisfied; it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that

1.      The Plan is hereby **CONFIRMED**; and

2.      Until the Effective Date of the Plan, the Debtors shall continue to file the UST Form 11-MOR, Monthly Operating Report and shall timely pay the U.S. Trustee the appropriate sums required pursuant to 28 U.S.C. § 1930(a)(6) (the "Quarterly Fees"). Within two business of the Effective Date, the applicable Debtors or the Liquidating Trustee shall file a Notice of Occurrence of the Effective Date, identifying the Effective Date and indicating that it has occurred. Following the Effective Date of the Plan, the applicable Debtors and the Liquidating Trustee shall be jointly and severally responsible for filing the UST Form 11-PCR, Post-confirmation Report, every calendar quarter and for timely paying the U.S. Trustee Quarterly Fees until the earlier of: (1) the entry of a final decree; (2) the conversion of the case to a case under another chapter; or (3) the dismissal of the case.

Dated: 12/8/2022

_____
Elizabeth D. Katz
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**WESTERN DIVISION**



| | |
|---|---|
| In re: | Chapter 11 |
| Community Eco Power, LLC, *et al.*,[1] | Case No. 21-30234 |
| Debtors. | (Jointly Administered) |

### COMMUNITY ECO POWER, LLC, COMMUNITY ECO SPRINGFIELD, LLC, COMMUNITY ECO PITTSFIELD, LLC, AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' JOINT PLAN OF LIQUIDATION DATED DECEMBER 7, 2022

**Proposed by:**

D. Sam Anderson, Esq.
Adam R. Prescott, Esq.
**BERNSTEIN SHUR SAWYER & NELSON, P.A.**
100 Middle Street
Portland, Maine 04101
sanderson@bernsteinshur.com
aprescott@bernsteinshur.com

*Counsel to Community Eco Power, LLC, Community Eco Springfield, LLC, and Community Eco Pittsfield, LLC*

Andrew C. Helman, Esq.
**DENTONS BINGHAM GREENEBAUM LLP**
One Beacon Street, Suite 25300
Boston, Massachusetts 02108
andrew.helman@dentons.com

-and-

April Wimberg, Esq.
Gina Young, Esq.
**DENTONS BINGHAM GREENEBAUM LLP**
3500 PNC Tower, 101 S. Fifth Street
Louisville, Kentucky 40202
april.wimberg@dentons.com
gina.young@dentons.com

*Counsel to the Official Committee of Unsecured Creditors of Community Eco Power, LLC, et al.*

---

[1] The last four digits of Community Eco Power, LLC's federal taxpayer identification number are 5513. See 11 U.S.C. § 342(c)(1). The last four digits of Community Eco Springfield, LLC's federal taxpayer identification number are 4363. See id. The last four digits of Community Eco Pittsfield, LLC's federal taxpayer identification number are 8358. See id. Prior to the sale of substantially all of the assets of two of the three Debtors, the principal place of business for the Debtors was 500 Hubbard Avenue, Pittsfield, Massachusetts 01201. The Debtors' mailing address is P.O. Box 510, Amesbury, Massachusetts 01913.

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

I.    ARTICLE I: DEFINITIONS AND CONSTRUCTION OF TERMS .........................1

II.   ARTICLE II:  DEEMED CONSOLIDATION AND APPROVAL OF CERTAIN
      COMPROMISES.............................................................................................................11

      2.1.    Deemed Consolidation for Limited Purposes under the Plan.............................11
      2.2.    No Substantive Consolidation; Reservation of Rights.......................................12
      2.3.    Confirmation Order Shall Constitute Approval of Compromises ......................12

III.  ARTICLE III: CONFIRMATION PROCEDURES ....................................................12

      3.1     Confirmation Procedures ...................................................................................12
      3.2     Procedure for Objections; Objections Deadline .................................................13
      3.3     Procedures for Voting; Voting Deadline ............................................................13
      3.4     Cramdown Confirmation ...................................................................................14

IV.   ARTICLE IV: CLASSIFICATION OF CLAIMS AND INTERESTS........................14

      4.1     Summary of Claims, Classes, Voting and Projected Recoveries .......................14
      4.2     Identification and Treatment of Classified Claims .............................................15
              a.      Administrative Claims .............................................................................15
                      i.      Final Administrative Claim Bar Date .............................................15
                      ii.     Professional Fee Bar Date...............................................................15
                      iii.    Section 503(b)(9) Claims ................................................................16
              b.      U.S. Trustee Fees ....................................................................................16
              c.      Priority or Secured Tax Claims................................................................16
              d.      Disputed Unclassified Claims..................................................................16
      4.3     Identification of Classes of Claims and Interests...............................................16
              a.      Class One.................................................................................................16
              b.      Class Two.................................................................................................16
              c.      Class Three...............................................................................................16
              d.      Class Four................................................................................................16
              e.      Class Five.................................................................................................16
              f.      Class Six...................................................................................................17
              g.      Class Seven ..............................................................................................17
              h.      Class Eight...............................................................................................17
      4.4     Treatment of Classified Claims and Interests ....................................................17
              a.      Treatment of the SDI Secured Claim (Class One) ...................................17
              b.      Treatment of Priority Unsecured Non-Tax Claims (Class Two) ...........17
              c.      Treatment of Allowed SDI Deficiency Claim (Class Three) .................17
              d.      Treatment of Allowed Covanta Claims (Class Four) ............................18
              e.      Treatment of ISO NE Claims (Class Five) ............................................18

   f. Treatment of Mattison Claims (Class Six) ...............................................19

   g. Treatment of Allowed General Unsecured Claims (Class Seven) ...........19

   h. Treatment of Interests (Class Eight) ......................................................20

  4.5 Reservation of Rights; No Allowance of Claims....................................20

V.  ARTICLE V: CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING ....................................................................................................................20

VI.  ARTICLE VI: MEANS FOR IMPLEMENTATION OF THE PLAN .........................21

  6.1 Vesting and Sale or Other Disposition of Remaining Assets; Liquidating Trust Expenses .................................................................................................21

  6.2 Initial Liquidating Trustee .......................................................................22

  6.3 Liquidating Trustee's Counsel .................................................................22

  6.4 Insurance ..................................................................................................22

  6.5 Dissolution ...............................................................................................23

  6.6 Release of Liens and Security Instruments ..............................................23

  6.7 Cancellation of Notes and Instruments ....................................................23

  6.8 Purpose of Liquidating Trust ...................................................................23

  6.9 Preservation of All Causes of Action and Standing..................................24

  6.10 Effectuating Documents and Further Transactions...................................24

  6.11 Insurance Policies ....................................................................................24

   a. Insurance Policies Remain In Force ......................................24

   b. D&O Insurance Policies; Employment Practice Liability Policies; Similar Policies ..................................................................................24

  6.12 Dissolution of Creditors' Committee........................................................24

  6.13 Transfer of Privilege; No Waiver .............................................................24

  6.14 Records ....................................................................................................25

  6.15 Final Decree .............................................................................................25

  6.16 Interim Distributions; Disputed Claim Reserve........................................25

  6.17 Intercompany Claims ...............................................................................25

VII.  ARTICLE VII: EXECUTORY CONTRACTS ..........................................................25

  7.1 Rejection of Executory Contracts and Unexpired Leases.....................25

  7.2 Bar Date for Rejection Damages Claims ..................................................26

VIII. ARTICLE VIII: PROVISIONS GOVERNING RESOLUTION OF CLAIMS AND DISTRIBUTION OF REMAINING ASSETS ............................................................26

  8.1 Right to Object to Claims .........................................................................26

  8.2 Distribution Provisions .............................................................................26

   a. Distributions to be Made and Adequate Reserves ...................26

   b. No Liability.............................................................................27

   c. Distributions on Account of Disputed Claims.........................27

   d. No Distributions Pending Disputes.........................................27

|  | e. | Unclaimed Distribution | 27 |
|  | f. | Delivery of Distributions and Undeliverable Distributions to Holders of Claims | 27 |
|  | g. | Undeliverable Distributions | 28 |
|  | h. | De Minimis Distributions | 28 |
|  | i. | Remainder Amount After Final Distribution | 28 |

IX.   ARTICLE IX: RELEASES, INJUNCTIONS, AND RELATED PROVISIONS .........28

|  | 9.1 | Releases by the Debtor | 28 |
|  | 9.2 | Exculpation and Limitation of Liability | 29 |
|  | 9.3 | Injunctions | 29 |

X.    ARTICLE X: CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE.......30

|  | 10.1 | Conditions Precedent to Confirmation | 30 |
|  | 10.2 | Conditions Precedent to the Effective Date | 30 |
|  | 10.3 | Effect of Failure of Conditions | 30 |
|  | 10.4 | Filing of Notice of Effective Date | 30 |

XI.   ARTICLE XI: MODIFICATION, REVOCATION, OR WITHDRAWAL
      OF PLAN……………………………………………………………………31

|  | 11.1 | Modification and Amendments | 31 |
|  | 11.2 | Effect of Confirmation on Modification | 31 |
|  | 11.3 | Revocation or Withdrawal of the Plan | 31 |

XII.  ARTICLE XII: JURISDICTION | 31

XIII. ARTICLE XIII: MISCELLANEOUS | 32

|  | 13.1 | Exemption from Taxes | 32 |
|  | 13.2 | Compliance with Tax Requirements | 33 |
|  | 13.3 | Defenses and Setoff | 33 |
|  | 13.4 | Governing Law | 33 |
|  | 13.5 | Successors and Assigns | 34 |
|  | 13.6 | Debtors' Post-Confirmation Management | 34 |
|  | 13.7 | Immediate Binding Effect | 34 |
|  | 13.8 | Severability of Plan Provisions | 34 |
|  | 13.9 | Exhibits | 35 |
|  | 13.10 | No Admissions | 35 |
|  | 13.11 | Conflicts Among Plan Documents | 35 |
|  | 13.12 | Recommendation | 35 |

## TABLE OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| A | Liquidating Trust Agreement |
| B | Mutual Release Agreement |
| C | Contracts Schedule |

## INTRODUCTION

Community Eco Power, LLC, Community Eco Springfield, LLC, and Community Eco Pittsfield, LLC, the above-captioned debtors and debtors-in-possession, on the one hand, and the Official Committee of Unsecured Creditors, on the other hand, hereby propose this Joint Plan of Liquidation Dated December 7, 2022, to all of the Debtors'[2] known Holders of Claims and Interests, as authorized by § 1121(a) of the Bankruptcy Code.

## ARTICLE I:
## DEFINITIONS AND CONSTRUCTION OF TERMS

As used in this Plan, the following terms have the following meanings:

**1.1.** "**503(b)(9) Bar Date**" shall mean September 27, 2021, at 4:30 p.m., as set forth in the Bar Date Order.

**1.2.** "**503(b)(9) Claims**" shall mean all Claims arising under § 503(b)(9) of the Bankruptcy Code against a Debtor that were: (i) Filed against a Debtor; or (ii) listed by a Debtor in its Schedules.

**1.3.** "**Accounts Receivable**" shall mean any and all accounts receivable, credit card receivables, notes receivable, and other amounts receivable owed to a Debtor (whether current or non-current), together with any interest or unpaid financing charges accrued thereon, including all actions pertaining to the collection of amounts payable, or that may become payable, to a Debtor with respect to products sold or services performed by a Debtor.

**1.4.** "**Administrative Claim**" shall mean any right to payment constituting a cost or expense of administration of the Chapter 11 Cases as it relates to a Debtor under §§ 503(b) and 507(a)(2) of the Bankruptcy Code, including, all compensation and reimbursement of expenses awarded or otherwise approved for payment by Final Order of the Bankruptcy Court under §§ 330, 503(b) or 1129(a)(4) of the Bankruptcy Code, any fees or charges assessed against the Debtor's Estate under § 1930 title 28 of the United States Code, all post-Petition Date taxes, and all other Claims entitled to administrative expense status pursuant to a Final Order of the Bankruptcy Court.

**1.5.** "**Allowed Claim**" shall mean all or a portion of a Claim against a Debtor or an Interest in a Debtor: (a) that has been listed by a Debtor in its Schedules as liquidated in amount and not "Disputed" or "Contingent;" (b) as to which no Objection or request for estimation has been Filed on or before the applicable Claim Objection deadline under this Plan; (c) as to which any Objection has been settled, waived, withdrawn, or denied by a Final Order; or (d) that is allowed: (i) by a Final Order, (ii) by an agreement between the Holder of such Claim or Interest and the Debtors prior to the Effective Date, or the Liquidating Trustee after the Effective Date, or (iii) pursuant to the terms of this Plan. For purposes of computing Distributions, a Claim or

---

[2] Capitalized terms used, but not defined at the time of initial use, shall have the meaning set forth in Article I of the Plan.

Interest that has been deemed "Allowed" shall not include interest, costs, fees or charges on such Claim or Interest from and after the Petition Date, except as otherwise expressly set forth in this Plan.

**1.6.** "**Asset Purchase Agreement(s)**" shall mean, individually or collectively, those certain asset purchase agreements between: (i) Community Eco Pittsfield, LLC and Casella Waste Management of Massachusetts, Inc. and its designees and assigns; and (ii) Community Eco Springfield, LLC and F & G, LLC and its designees and assigns, as each may have been amended from time to time, and including all schedules and exhibits thereto.

**1.7.** "**Bankruptcy Code**" shall mean title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., and as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Chapter 11 Cases.

**1.8.** "**Bankruptcy Court**" shall mean the United States Bankruptcy Court for the District of Massachusetts.

**1.9.** "**Bankruptcy Rules**" shall mean, when referenced generally: (i) the Federal Rules of Bankruptcy Procedure, as amended and promulgated under § 2075 of title 28 of the United States Code; (ii) the applicable Federal Rules of Civil Procedure, as amended and promulgated under § 2072 of title 28 of the United States Code; (iii) the applicable Local Rules; and (iv) any standing orders governing practice and procedure issued by the Bankruptcy Court and/or the District Court associated with the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

**1.10.** "**Bar Date Order**" shall mean the Bankruptcy Court's *Order (A) Establishing Bar Dates for Filing Proofs of Claim; and (B) Approving the Form and Manner of Notice Thereof* [Dkt. No. 193].

**1.11.** "**Business Day**" shall mean any day, other than a Saturday, Sunday, or a legal holiday (as that term is defined in Bankruptcy Rule 9006(a)).

**1.12.** "**Buyer(s)**" shall mean, individually or collectively, F & G, LLC and its designees and affiliates, and Casella Waste Management of Massachusetts, Inc. and its designees and affiliates, as each acquired the Purchased Assets pursuant to the Asset Purchase Agreements and the Sale Orders.

**1.13.** "**Cash**" or "**$**" shall mean legal tender of the United States of America or the equivalent thereof, including bank deposits, checks and cash equivalents.

**1.14.** "**Causes of Action**" shall mean all Claims, causes of action, controversies, obligations, suits, judgments, damages, demands, debts, rights, preference actions, fraudulent conveyance actions and other claims or causes of action under §§ 510, 544, 545, 546, 547, 548, 549, 550, and 553 of the Bankruptcy Code and other similar state law claims and causes of action, Liens, indemnities, guaranties, suits, liabilities, judgments, accounts, defenses, offsets,

powers, privileges, licenses and franchises of any kind or character whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, suspected or unsuspected, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, arising in law, equity or pursuant to any other theory of law. For the avoidance of doubt, Causes of Action shall also include: (a) any right of setoff, counterclaim or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to § 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury, and any other defenses set forth in § 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

**1.15.**    "**Chapter 11 Cases**" shall mean the Debtors' chapter 11 cases, which are jointly administered under Case No. 21-30234 in the Bankruptcy Court. All citations herein to the docket shall refer to the Chapter 11 Cases, unless otherwise stated.

**1.16.**    "**Claim(s)**" shall mean a claim or claims against a Debtor, as such term is defined in § 101(5) of the Bankruptcy Code.

**1.17.**    "**Claims Objection Deadline**" shall mean ninety (90) days after the Effective Date, or such later date as may be ordered by the Bankruptcy Court, provided however, that the Liquidating Trustee or the Debtors may file one or more motions with the Bankruptcy Court to extend the Claims Objection Deadline. The Claims Objection Deadline shall also constitute the deadline for the Debtors or Liquidating Trustee to object to Priority Claims and Administrative Claims (other than Professional Fee Claims).

**1.18.**    "**Class**" shall mean each category or group of Holders of Claims or Interests that has been designated as a class in this Plan.

**1.19.**    "**Confirmation Date**" shall mean the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, unless otherwise stated in the Confirmation Order.

**1.20.**    "**Confirmation Hearing**" shall mean the hearing held by the Bankruptcy Court pursuant to § 1128 of the Bankruptcy Code to consider confirmation of this Plan.

**1.21.**    "**Confirmation Order**" shall mean the Final Order of the Bankruptcy Court confirming the Plan.

**1.22.**    "**Contingent**" shall mean, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

**1.23.**    "**Covanta**" shall mean, collectively, Covanta Projects LLC, Covanta Sustainable Solutions, LLC, Covanta Metals Marketing, LLC, and each of their affiliates, predecessors, successors (excluding the Debtors, provided that nothing herein shall be an

3

admission that the Debtors are a successor of Covanta, or, that Covanta is a predecessor of the Debtors), and assigns.

1.24.    "**Covanta Claims**" shall mean any and all Claims held or asserted by, through, or on behalf of Covanta against the Debtors or the Estates, including, without limitation, Rejection Damages Claims, subrogation or indemnification Claims, Claims filed by Covanta under Bankruptcy Rule 3005, and any and all Proofs of Claim (and amendments thereto) filed by or through Covanta, including the following: (i) as to Community Eco Power, LLC, Proof of Claim Numbers 45, 60, and 61; (ii) as to Community Eco Springfield, LLC, Proof of Claim Numbers 22, 27, and 28; and (iii) as to Community Eco Pittsfield, LLC, Proof of Claim Numbers 19 and 22.  For avoidance of doubt, the Covanta Claims shall include any Claim held by or on behalf of the City of Springfield relating to or arising from the rejection or termination of any contract between a Debtor and the City of Springfield.

1.25.    "**Creditor**" shall have the meaning ascribed to such term in § 101(10) of the Bankruptcy Code.

1.26.    "**Creditors' Committee**" shall mean the official committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Cases, pursuant to the *Notice of Appointment of Creditors' Committee* [Dkt. No. 80].

1.27.    "**Debtor**" shall mean, singularly, one of Community Eco Power, LLC, Community Eco Springfield, LLC, or Community Eco Pittsfield, LLC, including each in its capacities prior to the Petition Date, as a debtor-in-possession in the Chapter 11 Cases, and as an Entity after the Effective Date.

1.28.    "**Debtors**" shall mean, collectively, Community Eco Power, LLC, Community Eco Springfield, LLC, and Community Eco Pittsfield, LLC, including each in its capacities prior to the Petition Date, as a debtor-in-possession in the Chapter 11 Cases, and as an Entity after the Effective Date.

1.29.    "**DIP/Cash Collateral Orders**" shall mean the *Final Order: (I) Approving Post-Petition Borrowing; (II) Authorizing Debtors To Enter Into Post-Petition Invoice Purchasing And Security Agreement With Alterna Capital Solutions LLC; (III) Granting Security Interests And Super-Priority Administrative Expense Claims; (IV) Authorizing The Use Of Cash Collateral; (V) Granting Adequate Protection; (VI) Modifying Automatic Stay; and (VII) Granting Related Relief* [Dkt. No. 270] and all amendments thereto as ordered by the Bankruptcy Court.

1.30.    "**Disallowed**" shall mean, with respect to any Claim or Interest or portion thereof, any Claim against or Interest in a Debtor that: (i) has been disallowed, waived, or released, in whole or part, by a Final Order (including, but not limited to, the Confirmation Order); (ii) has been withdrawn, waived, or released by agreement of the Holder thereof and a Debtor or the Liquidating Trustee, in whole or in part; (iii) has been withdrawn, in whole or in part, by the Holder thereof; (iv) if identified in the Schedules and listed as zero or as Disputed, Contingent, and/or unliquidated and in respect of which a Proof of Claim or a Proof of Interest, as applicable,

has not been timely Filed or deemed timely Filed pursuant to the Plan, the Bankruptcy Code, or any Final Order or other applicable law or as otherwise agreed; (v) has been reclassified, expunged, subordinated, or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the Filed amount of any Proof of Claim or Proof of Interest; or (vi) is not listed in the Schedules and as to which no timely and proper Proof of Claim or Proof of Interest has been filed in accordance with the Bar Date Order or any other applicable Final Order establishing a bar date in the Chapter 11 Cases, including as to any Rejection Damages Claim.

    **1.31.** "**Disclosure Statement**" shall mean that certain disclosure statement filed by the Plan Proponents with respect to this Plan, as the same may be amended, supplemented, revised, or modified from time to time, and approved as containing adequate information pursuant to a Final Order, including, without limitation, all exhibits, appendices, and schedules attached thereto.

    **1.32.** "**Disputed**" shall mean any Claim or Interest that has not yet been Allowed or Disallowed.

    **1.33.** "**Distribution**" shall mean any distribution made pursuant to the Plan by the Liquidating Trustee or the Debtors to the Holder of an Allowed Claim or Allowed Interest.

    **1.34.** "**Effective Date**" shall mean the first Business Day after the Confirmation Order becomes a Final Order, provided that conditions in Article 10.2 are satisfied.  If the Confirmation Order has been stayed and that stay remains in place after the Effective Date would have occurred, the Effective Date shall mean the first Business Day following the date upon which any stay of the Confirmation Order is no longer effective.

    **1.35.** "**Entity**" shall have the meaning ascribed to such term in § 101(15) of the Bankruptcy Code.

    **1.36.** "**Escrow Account**" shall mean that certain escrow account maintained at Bernstein Shur Sawyer & Nelson, P.A. in which the Sale Proceeds were transferred at each Sale closing and from which certain Distributions under this Plan shall be made.

    **1.37.** "**Estate(s)**" shall mean, singularly or collectively, the estates of the Debtors, or an estate of a Debtor, created pursuant to § 541 of the Bankruptcy Code.

    **1.38.** "**Exculpated Parties**" shall mean: (i) the Debtors; (ii) Richard Fish, David Beavens, and Cynthia Dixey, each in their capacities as directors, officers, and/or senior employees of the Debtors; and (iii) the members of the Creditors' Committee solely in his/her/its capacity as a member of the Creditors' Committee; and (iv) the Professionals of the Debtors and the Creditors' Committee, each solely in their capacities as such with respect to the Debtors or the Creditors' Committee (as applicable).

    **1.39.** "**Executory Contract**" shall mean a contract or lease to which a Debtor is a party that is subject to assumption or rejection under § 365 of the Bankruptcy Code.

**1.40.** "**File**," "**Filed**," or "**Filing**" shall mean, respectively, file, filed, or filing with the Bankruptcy Court in the Chapter 11 Cases; provided, however, that with respect to Proofs of Claim and Proofs of Interest only, "Filed" shall mean delivered and received in the manner provided by the Bar Date Order or as otherwise established by a Final Order.

**1.41.** "**Final Administrative Claim Bar Date**" shall mean the date that is fourteen (14) days after the Effective Date, which shall also be the deadline for Filing requests for payment of Administrative Claims (other than Professional Fee Claims) that: (i) arose after the Petition Date; and (ii) were not paid as of the Effective Date.

**1.42.** "**Final Order**" shall mean an unstayed order, ruling or judgment of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or request for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending, or as to which any right to appeal, petition for certiorari, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtors or the Liquidating Trustee on behalf of the Estates (on or after the Effective Date), or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been determined by the highest court to which such order was appealed, or certiorari, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be Filed with respect to such order, shall not cause such order not to be a Final Order.

**1.43.** "**General Bar Date**" shall mean October 29, 2021, at 4:30 p.m., as established by the Bar Date Order.

**1.44.** "**General Unsecured Claim**" shall mean any unsecured Claim against a Debtor that arose or is deemed by the Bankruptcy Code or Bankruptcy Court, as the case may be, not to be: (i) an Administrative Claim; (ii) a Priority Tax Claim; or (iii) a Priority Non-Tax Claim. The SDI Deficiency Claim, Covanta Claims, and Mattison Claims shall be General Unsecured Claims.

**1.45.** "**Governmental Unit**" shall have the meaning ascribed to such term in § 101(27) of the Bankruptcy Code.

**1.46.** "**Holder**" or "**Holders**" shall mean the legal or beneficial Holder of a Claim or Interest (and, when used in conjunction with a Class or type of Claim or Interest, means a Holder of a Claim or Interest in such Class or of such type).

**1.47.** "**Impaired**" shall mean, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of § 1124 of the Bankruptcy Code.

**1.48.**   "**Insider**" shall have the meaning ascribed to such term in § 101(31) of the Bankruptcy Code.

**1.49.**   "**Intercompany Claim**" shall mean any Claim held by a Debtor against another Debtor.

**1.50.**   "**Interests**" shall mean the equity or equivalent ownership interests of any Person or Entity in a Debtor, which shall include the following: (i) as to Community Eco Power, LLC, SCG Advisors, LLC, Richard Fish, Checkmate Strategic Capital 2, LLC, Linwood Bubar, and Christopher Nelson as members of Community Eco Power, LLC; (ii) as to Community Eco Springfield, LLC, Community Western Massachusetts, LLC as sole member of Community Eco Springfield, LLC; and (iii) as to Community Eco Pittsfield, LLC, Community Western Massachusetts, LLC as sole member of Community Eco Pittsfield, LLC.

**1.51.**   "**IRS**" shall mean the Internal Revenue Service and/or assigns.

**1.52.**   "**ISO NE**" shall mean ISO New England, Inc. and its predecessors, successors, and assigns.

**1.53.**   "**Lien**" shall mean any mortgage, lien, Claim, interest, encumbrance, security interest, restriction, charge, or assessment, of every kind, nature, and description, against, in or upon the Remaining Assets, whether recorded or unrecorded, fixed or contingent, perfected or unperfected, possessory or non-possessory, known or unknown, and, without limiting the foregoing, shall include the meaning set forth in § 101(37) of the Bankruptcy Code.

**1.54.**   "**Liquidating Trust**" shall mean the liquidating trust established under this Plan and the Liquidating Trust Agreement.

**1.55.**   "**Liquidating Trust Agreement**" shall mean the trust agreement that establishes the Liquidating Trust and governs the powers, duties, and responsibilities of the Liquidating Trustee, which shall be in substantially the form as attached hereto as **Exhibit A**.

**1.56.**   "**Liquidating Trust Expenses**" shall mean the reasonable fees, costs, and expenses of the Liquidating Trust, as determined in the reasonable discretion of the Liquidating Trustee.  U.S. Trustee Fees shall be considered a Liquidating Trust Expense.  Liquidating Trust Expenses shall include compensation to the Liquidating Trustee, as set forth in the Liquidating Trust Agreement.

**1.57.**   "**Liquidating Trustee**" shall mean the Person appointed pursuant this Plan and the Liquidating Trust Agreement to serve as the trustee of the Liquidating Trust for the purposes of, among other things, liquidating the Remaining Assets and making Distributions.

**1.58.**   "**Local Rules**" shall mean the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Massachusetts.

**1.59.** "**Mattison Claims**" shall mean any and all Claims held by Roger Mattison and/or Nancy Mattison, or their assigns, against a Debtor or an Estate, including, without limitation, the Disputed Claim set forth in Proof of Claim Number 24 filed against Community Eco Springfield, LLC.

**1.60.** "**MPSA**" shall mean that certain Market Participant Service Agreement with an effective date of June 1, 2019, between ISO NE and Community Eco Power, LLC.

**1.61.** "**Mutual Release Agreement**" shall mean that certain mutual release agreement by and among the Debtors, Creditors' Committee, SDI, and Covanta, which is attached to the Plan as **Exhibit B**.

**1.62.** "**Objection(s)**" shall mean any objection, application, motion, complaint, or any other legal proceeding seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify, or establish the priority, expunge, subordinate, or estimate any Claim or Interest (including, but not limited to, the resolution of any Filing seeking payment of any Administrative Claim).

**1.63.** "**Parts and Equipment Proceeds**" shall mean Cash in the amount of **$176,000.00**, which constitutes the portion of the Sale Proceeds received on account of the following Purchased Assets: (A) **$98,000.00** for the: (i) Massachusetts Department of Environmental Protection, Authorization to Operate; (ii) City of Pittsfield Sewer Discharge Permit, DPU #98040101; (iii) City of Pittsfield Solid Waste Facility Site Assignment Permit: (iv) BWP SW 40 - Beneficial Use Determination, Processed Bottom Ash, Transmittal No. W119501, 07-236-007 (issued by MassDEP April 13, 2007); and (v) the miscellaneous parts and equipment conveyed pursuant to that certain Bill of Sale and Assignment Agreement between the Debtor and the Buyer dated on or about May 13, 2022 (Exhibit C to the Asset Purchase Agreement); and (B) **$78,000.00** for the: (i) Covanta Springfield LLC and Massachusetts DEP, Authorization to Operate Resource Recovery Facility and Transfer Station, Transmittal Nos. X273204 and X273205; (ii) Covanta Springfield, LLC and US EPA General Permit for Stormwater Discharges, NOI MAR053565; (iii) 2009 Volvo L70 Front End Loader; (iv) 2018 Volvo L90 Front End Loader; and (v) 2012 G25E Daewoo Forklift.

**1.64.** "**Person**" shall have the meaning ascribed to such term in § 101(41) of the Bankruptcy Code.

**1.65.** "**Petition Date**" shall mean June 25, 2021, the date on which the Debtors commenced the Chapter 11 Cases in the Bankruptcy Court.

**1.66.** "**Plan**" shall mean this joint plan of liquidation under chapter 11 of the Bankruptcy Code, as it may be altered, amended, modified, or supplemented from time to time, including in accordance with any documents submitted in support hereof and the Bankruptcy Code or the Bankruptcy Rules, and including all exhibits and schedules hereto.

**1.67.** "**Plan Proponents**" shall mean, collectively, the Debtors and the Creditors' Committee.

**1.68.** "**Priority Non-Tax Claim**" shall mean any and all Claims accorded priority in right of payment under § 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

**1.69.** "**Priority Tax Claim**" shall mean a Claim, or a portion of a Claim, accorded priority under § 507(a)(8) of the Bankruptcy Code.

**1.70.** "**Pro Rata**" shall mean the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that respective Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan, as applicable.

**1.71.** "**Professional**" shall mean any professional employed in the Chapter 11 Cases by a Final Order pursuant to Bankruptcy Code §§ 327, 328, or 1103, which shall include, but not be limited to, Bernstein Shur Sawyer & Nelson, P.A., Beveridge & Diamond, P.A., Deltaway Energy International, Inc., RSM US LLP, and Dentons Bingham Greenbaum, LLP.

**1.72.** "**Professional Fee Bar Date**" shall mean the deadline for Filing all final applications for allowance of Professional Fee Claims, which deadline shall be forty-five (45) days after the Effective Date.

**1.73.** "**Professional Fee Claims**" shall mean a Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred after the Petition Date and on or before the Effective Date.

**1.74.** "**Purchased Assets**" shall mean those certain assets of a Debtor purchased by a Buyer pursuant to the Sale Orders and the Asset Purchase Agreements.

**1.75.** "**Real Estate Proceeds**" shall mean that portion of the Sale Proceeds that constitutes the proceeds of the Purchased Assets pursuant to the Asset Purchase Agreements arising out of the sale of real estate, fixtures, and/or improvements that have not otherwise been disbursed by the Debtors pursuant to a Final Order as of the Effective Date.

**1.76.** "**Rejection Damages Bar Date**" shall mean the deadline by which a counterparty to an Executory Contract rejected by a Debtor must File a Proof of Claim for damages arising from such rejection, and shall be, except as otherwise set forth in a separate Final Order of the Bankruptcy Court authorizing the rejection of an Executory Contract and setting a different date for any Entity to assert a Claim arising from such rejection, thirty (30) days after the effective date of the rejection of such Executory Contract, including as to those Executory Contracts that are rejected effective upon entry of the Confirmation Order in accordance with this Plan.  For avoidance of doubt, nothing in this Plan shall modify or extend any deadline to File a Claim for a Rejection Damages Claim that was established by a Final Order of the Bankruptcy Court prior to the Effective Date.

**1.77.** "**Rejection Damages Claim**" shall mean any timely Filed Claim for amounts due as a result of the rejection by the Debtors of any Executory Contract under § 365 of the Bankruptcy Code.

**1.78.** "**Released Party**" shall mean the Estates; provided that nothing in the Plan shall release Holders of Interests in the Debtors or any Manager, director, or officer of any of the Debtors from Causes of Action, provided notwithstanding anything to the contrary in the Plan or Confirmation Order, any recovery on account of a Causes of Action against Interest Holders of the Debtors or any Manager, director, or officer of any of the Debtors shall be limited to the proceeds of applicable D&O insurance policies.

**1.79.** "**Remaining Assets**" means, as in existence on or after the Effective Date, all tangible and intangible assets of every kind and nature of the Debtors and the Estates within the meaning of § 541 of the Bankruptcy Code (and the proceeds thereof), including, but not limited to, Interests, Cash, Causes of Action, the Remaining Parts and Equipment, the Parts and Equipment Proceeds, and the Real Estate Proceeds.

**1.80.** "**Remaining Parts and Equipment**" shall mean those parts, equipment, and similar personal property owned by a Debtor as of the Effective Date, but excluding any assets abandoned pursuant to the *Debtors' Notice of Abandonment of Certain Burdensome Equipment Located at the Pittsfield Facility* [Dkt. No. 713].

**1.81.** "**Representatives**" shall mean with respect to an Entity, all of that Entity's current and former managed and controlled affiliates and subsidiaries, and its and each of the foregoing Entity's respective officers, directors, managing members, principals, shareholders, members, partners, employees, attorneys, professionals (including Professionals), and other representatives.

**1.82.** "**Sale Order(s)**" shall mean, singularly or collectively, the: (i) *Order Granting Sale Motion Relating To Certain Assets Of Community Eco Springfield, LLC* [Dkt. No. 502], dated April 15, 2022; and (ii) the *Order Granting Sale Motion Relating To Certain Assets Of Community Eco Pittsfield, LLC* [Dkt. No. 557], dated May 6, 2022.

**1.83.** "**Sale Proceeds**" shall mean the Cash paid by the Buyers for the Purchased Assets, after accounting for closing costs and other adjustments at closing, all as reflected on the closing statement relating to the Sales.

**1.84.** "**Sales**" shall mean the sales of the Purchased Assets to the Buyers pursuant to the Asset Purchase Agreements and the Sale Orders.

**1.85.** "**Schedules**" shall mean the schedules of Assets and Liabilities, schedules of Executory Contracts, and Statements of Financial Affairs Filed by each Debtor pursuant to § 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time, which were filed in the Chapter 11 Cases.

**1.86.**    "**SDI**" shall mean SDI, Inc. and its predecessors, successors, and assigns.

**1.87.**    "**SDI Deficiency Claim**" shall mean the Allowed General Unsecured Claim of SDI in the amount of **$4,919,000.00**, which is calculated as follows: SDI's total Claim of **$5,395,000.00** less the SDI Secured Claim of **$476,000.00**.

**1.88.**    "**SDI Secured Claim**" shall mean the Allowed Secured Claim held by SDI for the amount of **$476,000.00**, which is calculated as follows: **$300,000.00** (the agreed-upon amount of the Secured Claim based on Cash and Accounts Receivable on the Petition Date), plus the Parts and Equipment Proceeds in the amount of **$176,000.00**.

**1.89.**    "**Secured Claim**" shall mean, pursuant to § 506 of the Bankruptcy Code, that portion of a Claim that is secured by a valid, perfected, and enforceable security interest, Lien, mortgage, or other encumbrance, that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon the Remaining Assets.

**1.90.**    "**Tax**" or "**Taxes**" shall mean all income, gross receipts, sales, use, transfer, payroll, employment, franchise, profits, property, excise, or other similar taxes, estimated import duties, fees, and duties, value added taxes, assessments, or charges (whether payable directly or by withholding), together with any interest and any penalties, additions to tax, or additional amounts imposed by any taxing authority of a Governmental Unit with respect thereto.

**1.91.**    "**Unclaimed Distributions**" shall mean any undeliverable or unclaimed Distributions.

**1.92.**    "**Unclassified Claims**" shall mean the Claims that are not placed in a Class, as set forth in Article 4.2 of the Plan.

**1.93.**    "**Unimpaired**" shall mean, when used in reference to a Claim or Interest, any Claim or Interest that is not Impaired within the meaning of § 1124 of the Bankruptcy Code.

**1.94.**    "**U.S. Trustee**" shall mean the Office of the United States Trustee.

**1.95.**    "**U.S. Trustee Fees**" shall mean the fees payable pursuant to 28 U.S.C. § 1930.

## ARTICLE II:
## DEEMED CONSOLIDATION AND APPROVAL OF CERTAIN COMPROMISES

### 2.1    Deemed Consolidation for Limited Purposes under the Plan

**Immediately upon the Effective Date, the Debtors and their Estates shall be deemed consolidated solely for the following purposes: (i) all Remaining Assets shall be treated as and "pooled" as if they were merged solely for purposes of Distributions under the Plan, including for distribution by the Debtors and/or the Liquidating Trustee; (ii) all Intercompany Claims shall be eliminated; (iii) each Claim Filed or to be Filed against a Debtor shall be deemed a single, nonaggregated Claim against, and a single non-aggregated**

11

obligation of, the Debtors solely for purposes of Distributions under the Plan; (iv) all guarantees of a Debtor of the payment, performance, or collection of obligations of another Debtor shall be eliminated and canceled; (v) all transfers and Distributions on account of Claims made by or on behalf of any of the Debtors' Estates shall be deemed to be made by or on behalf of all of the Debtors' Estates; (vi) Holders of Allowed Claims entitled to Distributions under this Plan shall be entitled to Distributions from the Remaining Assets in accordance with the terms of the Plan on account of such Claim without regard to which Debtor was originally liable for such Claim; (vii) the deemed consolidation of the Remaining Assets and Claims under this Plan, by itself, shall not constitute impairment of a Class of Claims or Interests in the Plan for purposes of § 1124 of the Bankruptcy Court; and (viii) voting on the Plan shall occur on a consolidated basis by each Class entitled to vote, including as to calculating acceptance or rejection by a Class pursuant to § 1126 of the Bankruptcy Code.

### 2.2     No Substantive Consolidation; Reservation of Rights

For the avoidance of doubt, the deemed consolidation under Article 2.1 of this Plan shall not (other than solely for the purposes stated in this Plan) affect the legal and corporate structures of the Debtors, including, without limitation, the title to the Remaining Assets or the obligors on Claims.  For further avoidance of doubt, in the event that the Plan is not confirmed, or the Effective Date does not occur, nothing in this Plan shall constitute an admission by any Entity or Person, including, without limitation, the Debtors, the Creditors' Committee, and/or SDI, regarding substantive consolidation or any other form of consolidation of the Debtors or their Estates, and all such rights are specifically reserved.

### 2.3     Confirmation Order Shall Constitute Approval of Compromises

As described in more detail in the Disclosure Statement, this Plan incorporates the terms of compromises and settlements by and among: (i) the Debtors; (ii) the Creditor's Committee; (iii) SDI; (iv) Covanta; and (v) ISO NE.  The Confirmation Order shall constitute approval for the Plan Proponents to enter into, and execute on, those settlements as set forth in this Plan, including, without limitation, as if such order was entered under Bankruptcy Rule 9019.  The settlements set forth in this Plan are interrelated and non-severable.

### ARTICLE III:
### CONFIRMATION PROCEDURES

### 3.1     Confirmation Procedures

The Confirmation Hearing shall occur on **December 8, 2022 at 12:30 p.m.** (prevailing Eastern Time) at the Bankruptcy Court, United States Courthouse, 300 State Street, Springfield, MA 01105 (or via Zoom upon instructions to be timely provided).  The Confirmation Hearing may be adjourned from time to time without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by Filing a notice with the Bankruptcy Court.

### 3.2     Procedure for Objections; Objection Deadline

Any objection to confirmation of the Plan must be: (i) made in writing; and (ii) Filed with the Bankruptcy Court and served on counsel for the Plan Proponents and the U.S. Trustee so as to be actually received on or before **December 1, 2022, at 4:00 p.m. (prevailing Eastern Time)**. **UNLESS AN OBJECTION IS TIMELY FILED AND SERVED, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AT THE CONFIRMATION HEARING.** The addresses for the Plan Proponents and the Bankruptcy Court are as follows:

To the Debtors:

By Mail:   BERNSTEIN SHUR
Attn: Sam Anderson, Esq.
100 Middle Street, P.O. Box 9729
Portland, Maine 04101

By Email:  sanderson@bernsteinshur.com

To the Creditors' Committee:

By Mail:   DENTONS BINGHAM
GREENEBAUM LLP
Attn: Andrew C. Helman, Esq.
One Beacon Street, Suite 25300
Boston, Massachusetts 02108

By Email:  andrew.helman@dentons.com

To the Bankruptcy Court:

By Mail:  United States Bankruptcy Court
Attn: Clerk's Office
United States Courthouse
300 State Street
Springfield, MA 01105

### 3.3    Procedures for Voting; Voting Deadline

To be counted for voting purposes, properly completed ballots for acceptance or rejection of the Plan **MUST BE SERVED ON THE DEBTORS' COUNSEL** listed below, via mail, email, or facsimile, by no later than **December 1, 2022, at 4:00 p.m. (prevailing Eastern Time)** (the "Voting Deadline"):

**By Mail**:      Bernstein Shur
Attn: Sam Anderson, Esq.
100 Middle Street, P.O. Box 9729
Portland, Maine 04101

**By Email**:     sanderson@bernsteinshur.com

**By Fax**:       (207) 774-1127

**ALL BALLOTS MUST BE SIGNED BY AN AUTHORIZED PARTY AND FULLY COMPLETED. INCOMPLETE BALLOTS OR BALLOTS NOT ACTUALLY RECEIVED BY THE VOTING DEADLINE SHALL NOT BE COUNTED, AND BALLOTS THAT DO NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN SHALL NOT BE COUNTED. BALLOTS MAILED TO THE CLERK OF THE BANKRUPTCY COURT SHALL NOT BE COUNTED. EVEN IF YOU DO NOT**

VOTE TO ACCEPT THE PLAN, YOU MAY STILL BE BOUND BY THE PLAN IF IT IS ACCEPTED BY THE REQUISITE HOLDERS OF CLAIMS AND CONFIRMED BY THE BANKRUPTCY COURT.

BALLOTS MAILED TO THE CLERK OF THE BANKRUPTCY COURT SHALL **NOT** BE COUNTED.

### 3.4    Cramdown Confirmation

AS THE HOLDERS OF CLAIMS IN CERTAIN CLASSES ARE IMPAIRED AND MAY REJECT THE PLAN, ALL PARTIES ARE ADVISED THAT THE DEBTOR MAY SEEK CONFIRMATION OF THE PLAN UNDER THE "CRAM DOWN" PROVISIONS OF § 1129(b) OF THE BANKRUPTCY CODE.

### ARTICLE IV:
### CLASSIFICATION OF CLAIMS AND INTERESTS

### 4.1    Summary of Claims, Classes, Voting, and Projected Recoveries

The following chart summarizes the categories and treatment of Claims and Interests under this Plan, as well as describing whether Holders of Claims and Interests are entitled to vote on this Plan, and the projected recovery for each under this Plan.  **All parties are advised to read this Plan in its entirety and not to rely exclusively on this summary.**

| Category of Claim or Interest | Impaired or Unimpaired | Entitled to Vote on Plan (yes/no) | Projected Recovery |
|---|---|---|---|
| Unclassified Claims (including Administrative Claims (including Professional Fee Claims and 503(b)(9) Claims), U.S. Trustee Fees, and Priority Tax Claims) | Unimpaired | No | 100% |
| Class One: SDI Allowed Secured Claim | Impaired | Yes | 100% (by agreement) |
| Class Two: Priority Unsecured Non-Tax Claims | Unimpaired | No (deemed to accept Plan) | 100% |
| Class Three: Allowed SDI Deficiency Claim | Impaired | Yes | 35% (by agreement) |
| Class Four: Allowed Covanta Claims | Impaired | Yes | 9% |
| Class Five: ISO NE Claim | Impaired | Yes | Up to 100% (by agreement) |
| Class Six: Mattison Claims | Impaired | Yes | Up to 100% (against insurance proceeds) |

14

| Class Seven: General Unsecured Claims | Impaired | Yes | 22.5%[3] |
| Class Eight: Interests | Impaired | No (deemed to reject Plan) | 0% |

### 4.2    Identification and Treatment of Unclassified Claims

The following Claims shall be Unclassified Claims under the Plan:

(a)    <u>Administrative Claims</u>.    Each Holder of an Allowed Administrative Claim, including an Allowed Professional Fee Claim, shall receive, promptly after the date on which such Administrative Claim becomes Allowed in accordance with this Plan, in full and final satisfaction of, and in exchange for, such Allowed Administrative Claim: (a) Cash equal to the amount of such Allowed Administrative Claim; or (b) such other treatment as to which the Debtor or the Liquidating Trustee, as applicable, and the Holder of such Allowed Administrative Claim shall have agreed upon in writing.    Holders of Disallowed Administrative Claims shall not receive any Distribution under this Plan.

(i)    <u>Final Administrative Claim Bar Date</u>.    Holders of Administrative Claims accruing from the Petition Date through the Effective Date, other than Professional Fee Claims and Claims for U.S. Trustee Fees, shall File and serve on the Plan Proponents requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, so as to actually be received on or before the Final Administrative Claim Bar Date.    The Liquidating Trustee shall pay all Allowed Administrative Claims (other than Professional Fee Claims) not later than five (5) business days after such Claims become Allowed, unless otherwise agreed between the Liquidating Trustee and the Holder of the Allowed Administrative Claim.    **Any Administrative Claim (other than Professional Fee Claims and U.S. Trustee Fees) not Filed with the Bankruptcy Court by the Final Administrative Claim Bar Date shall be: (i) deemed waived by such Holder; (ii) immediately Disallowed without further action by the Bankruptcy Court or the Debtors; and (iii) the Holder of such Claim shall be forever barred from receiving a Distribution on account thereof.    The Final Administrative Claim Bar Date is the date that is fourteen (14) days after the Effective Date of the Plan.**

(ii)    <u>Professional Fee Bar Date</u>.    Professional Fee Claims are Administrative Claims, and all applications for allowance and payment of Professional Fee Claims shall be Filed with the Bankruptcy Court on or before the Professional Fee Bar Date.    The Liquidating Trustee shall pay all Allowed Professional Fee Claims not later than two (2) business days after entry of an Order by the Bankruptcy Court allowing such Claims, unless otherwise agreed between the Liquidating Trustee and the Holder of the Allowed Profession Fee Claims.    **If an application for a**

---

[3] The Plan Proponents' projected recovery for Holders of Allowed General Unsecured Claims in Class Seven is an estimate and is subject to variation based on a number of factors, including the amount of Allowed Administrative Expense Claims, the amount of Allowed Rejection Damages Claims, the outcome of Claim Objections, and recovery on Causes of Action.    The actual recovery for Class Seven may be higher or lower than projected.

**Professional Fee Claim is not Filed with the Bankruptcy Court by the Professional Fee Bar Date, such Professional Fee Claim shall be deemed waived and the Holder of such Claim shall be forever barred from receiving a Distribution on account thereof. The Professional Fee Bar Date is forty-five (45) days after the Effective Date of the Plan.**

(iii)    Section 503(b)(9) Claims. No 503(b)(9) Claims shall be Allowed under the Plan unless such Creditor Filed a timely Proof of Claim asserting a 503(b)(9) Claim before the 503(b)(9) Bar Date. All Allowed 503(b)(9) Claims as of the Effective Date shall be paid on or before the Effective Date, or if a Disputed 503(b)(9) Claim is subject to an Objection, as soon as practicable thereafter upon becoming an Allowed 503(b)(9) Claim.

(b)    U.S. Trustee Fees. All U.S. Trustee Fees due and payable prior to or after the Effective Date shall be paid by the Debtors when due in the ordinary course under applicable law. After the Effective Date, the applicable Debtor and the Liquidating Trustee shall be jointly and severally liable to pay any and all U.S. Trustee Fees when due and payable. The deemed consolidation under this Plan shall not modify any obligation to pay U.S. Trustee Fees, provided that the Debtors and Liquidating Trustee (as applicable) shall, in their business judgment, be entitled to allocate Distributions under this Plan to the appropriate Debtor for purposes of operating reports and calculating U.S. Trustee Fees.

(c)    Priority or Secured Tax Claims. Each Holder of an Allowed Priority or Secured Tax Claim shall receive, promptly after the date on which such Priority or Secured Tax Claim becomes Allowed, in full and final satisfaction of, and in exchange for, such Priority or Secured Tax Claim: (a) Cash equal to the amount of such Allowed Priority or Secured Tax Claim; or (b) such other treatment as to which the Debtors or the Liquidating Trustee, as applicable, and the Holder of such Allowed Priority or Secured Tax Claim, shall have agreed upon in writing.

(d)    Disputed Unclassified Claims. Except as otherwise set forth in this Article 4.2, if an unclassified Claim is Disputed as of the Effective Date, payment on account of such Disputed Claim shall be made in accordance with Article 8.2 of the Plan.

**4.3    Identification of Classes of Claims and Interests**

The following shall constitute the Classes of Claims and Interests under this Plan:

(a)    **Class One**: Class One shall contain the Allowed Secured Claim of SDI.

(b)    **Class Two**: Class Two shall contain Priority Unsecured Non-Tax Claims.

(c)    **Class Three**: Class Three shall contain the Allowed SDI Deficiency Claim.

(d)    **Class Four**: Class Four shall contain the Allowed Covanta Claims.

(e)    **Class Five:** Class Five shall contain the ISO NE Claims.

16

(f)    **Class Six**:  Class Six shall contain the Mattison Claims.

(g)    **Class Seven**: Class Seven shall contain General Unsecured Claims, including Rejection Damages Claims, but excluding General Unsecured Claims that are separately placed in a Class in this Plan, including the Allowed SDI Deficiency Claim, the Allowed Covanta Claims, the ISO NE Claims, and the Mattison Claims.

(h)    **Class Eight**: Class Eight shall contain the Interests in each of the Debtors.

### 4.4    Treatment of Classified Claims and Interests

(a)    Treatment of the SDI Secured Claim (Class One): SDI is the sole Holder of the Class One Claim.  Pursuant to the Plan, and by agreement among the Plan Proponents and SDI, upon the Effective Date, SDI shall be granted the Allowed SDI Secured Claim and shall receive, in full and final satisfaction of the Allowed SDI Secured Claim, a Distribution not later than December 31, 2022, in Cash in the amount of **$476,000.00**.  The Allowed SDI Secured Claim shall be payable directly from the Escrow Account upon written instruction from the Debtors or the Liquidating Trustee.  The Allowed SDI Secured Claim shall not be subject to challenge, objection, recharacterization, or subordination.  For avoidance of doubt, aggregate Distributions to SDI under the Plan shall be equal to **$2,200,000.00**, and SDI shall not be entitled to receive any Distributions under the Plan except as set forth in Class One and Class Three.  Upon receipt of the **$2,200,000.00** by SDI, the mutual releases in Section A of **Exhibit B** shall be effective and binding upon the Debtors, the Liquidating Trustee, and SDI.  **Such Claim in Class One is, therefore, Impaired and entitled to vote on the Plan.**

(b)    Treatment of Priority Unsecured Non-Tax Claims (Class Two). Each Holder of an Allowed Priority Unsecured Non-Tax Claim against a Debtor shall receive, promptly after the date on which such Priority Unsecured Non-Tax Claim becomes Allowed in accordance with this Plan, on account of, and in exchange for, such Allowed Priority Unsecured Non-Tax Claim, either: (i) Cash equal to the unpaid amount of such Allowed Priority Unsecured Non-Tax Claim; or (ii) such other treatment as the Debtors or the Liquidating Trustee, as applicable, and the Holder of such Allowed Priority Unsecured Non-Tax Claim shall have agreed.  **Such Claims in Class Two are, therefore, Unimpaired and not entitled to vote on the Plan.**

(c)    Treatment of Allowed SDI Deficiency Claim (Class Three).  SDI is the sole Holder of the Class Three Claim.  Pursuant to the Plan, and by agreement among the Plan Proponents and SDI, upon the Effective Date, SDI shall be granted the Allowed SDI Deficiency Claim and shall receive, in full and final satisfaction of the Allowed SDI Deficiency Claim, a Distribution not later than December 31, 2022, in Cash in the amount of **$1,724,000.00**.  The Allowed SDI Deficiency Claim shall be payable directly from the Escrow Account upon written instruction from the Debtors or the Liquidating Trustee.  The Allowed SDI Deficiency Claim shall not be subject to challenge, objection, recharacterization, or subordination.  For avoidance of doubt, aggregate Distributions to SDI under the Plan shall be equal to **$2,200,000.00**, and SDI shall not be entitled to receive any Distributions under the Plan except as set forth in Class One and Class Three.  Upon receipt of the **$2,200,000.00** by SDI, the mutual releases in Section A of

**Exhibit B** shall be effective and binding upon the Debtors, the Liquidating Trustee, and SDI. **Such Claim in Class Three is, therefore, Impaired and entitled to vote on the Plan.**

(d)      Treatment of Allowed Covanta Claims (Class Four).  Covanta is the sole Holder of the Class Four Claims.  Pursuant to the Plan, and by agreement among the Plan Proponents and Covanta, upon the Effective Date, Covanta shall have the Allowed Covanta Claims and shall receive, in full and final satisfaction of the Allowed Covanta Claims, a Distribution not later than December 31, 2022, in Cash in the amount of **$725,000.00**.  The Allowed Covanta Claims shall be payable directly from the Escrow Account upon written instruction from the Debtors or the Liquidating Trustee.  Further, contemporaneously with the payment of the Distribution required under Class Four, Covanta, the Debtors, and the Liquidating Trustee shall execute that certain Mutual Release Agreement attached hereto as **Exhibit B**.  For avoidance of doubt, Covanta shall not be entitled to receive any Distributions under the Plan except as set forth in this Class Four. **Such Claim in Class Four is, therefore, Impaired and entitled to vote on the Plan.**

In addition, on September 3, 2019, Community Eco Springfield, LLC, as Grantor, entered into a certain Trust Agreement (the "Trust Agreement") with Berkshire Bank ("Berkshire"), as Trustee, and Covanta Projects LLC, as beneficiary. Pursuant to the Trust Agreement, Berkshire established a trust fund account at the bank, known as Account No. 430634014 and titled "Community Eco Springfield, LLC Trust Account" (the "Trust Account"). The Debtor-Grantor made an initial deposit into the Trust Account of $225,000.00, which funds Berkshire continues to hold in trust for Covanta (together with any related interest, income, products and proceeds, the "Trust Fund Property").  Notwithstanding anything to the contrary contained in the Plan or any Confirmation Order, neither the Trust Account nor the Trust Fund Property shall be impaired, abridged, modified, altered, or affected in any way by the terms of this Plan, including, but not limited to, by the treatment of the Allowed Covanta Claims herein and the Mutual Release Agreement attached hereto as **Exhibit B**.  For the avoidance of doubt, all of Covanta's rights are reserved regarding the Trust Account and the Trust Fund Property and neither the Trust Account nor the Trust Fund Property are assets of the Debtors' Estates.

(e)      Treatment of ISO NE Claims (Class Five).  ISO NE is the sole Holder of the Class Five Claims. **Such Claim in Class Five is, therefore, Impaired and entitled to vote on the Plan.**  In full and final satisfaction of any and all Claims held by ISO NE against the Debtors, ISO NE shall receive the following treatment under the Plan:

(i)      Notwithstanding anything to the contrary in this Plan (including, without limitation, Article IX) and the Confirmation Order, on and after the Effective Date, the following contracts shall be assumed by and vest in the Community Eco Power, LLC under 11 U.S.C. § 365 (the "ISO NE Contracts"): (i) the MPSA; (ii) the Uncertificated Securities Control Agreement by and between ISO NE, the Debtor, and Blackrock Liquidity Funds ("Blackrock") effective as of March 3, 2019 (the "Control Agreement"); and (iii) Security Agreement between ISO NE and Community Eco Power, LLC, dated effective May 3, 2019 (the "Security Agreement"); and

(ii)     Notwithstanding anything to the contrary in the Plan or Confirmation Order, the following shall apply concerning the ISO NE Contracts: (1) any obligations accruing under the ISO NE Contracts before the Effective Date shall pass through and survive the confirmation of the Plan and nothing shall affect, release, or enjoin ISO NE's rights of recovery and/or enforcement of such obligations under the ISO NE Contracts, and/or ISO NE's rights of set-off and/or recoupment with regard to such obligations under the ISO NE Contracts; (2) ISO NE's Lien on the Collateral as defined in the Control Agreement and Security Agreement shall remain in effect and not be subject to any provisions of the Plan governing the release of Liens; (3) to provide adequate assurance of future performance under the ISO NE Contracts, on or before the Effective Date, the Debtors shall deposit with Blackrock Liquidity Funds funds to purchase Pledged Securities (as defined in the Control Agreement) sufficient to bring the total value of the Collateral (as defined in the Control Agreement and Security Agreement) to **$20,000.00** (the "ISO NE Collateral"), which such amount may be paid from the Escrow Account upon instruction from the Debtors or the Liquidating Trustee; (4) ISO NE may recover any outstanding obligations owed by one or more of the Debtors, including obligations arising under the ISO NE Contracts, solely by drawing against the ISO NE Collateral or by set-off or recoupment of any pending remittances; and (5) unless modified by the terms of the Plan, the relief granted in that certain Stipulation between ISO NE and the Debtors approved by the *Order Approving Stipulation between Debtors and ISO New England Inc. to Net Pre-Petition and Post-Petition Payments and Charges in the Ordinary Course of Business* [Dkt. No. 234] shall survive confirmation of the Plan.  Not later than one hundred and fifty (150) days after Community Eco Power, LLC is terminated as a market participant, ISO NE shall transfer any remaining Collateral (which shall include the ISO NE Collateral) to the Liquidating Trust.

(f)     Treatment of the Mattison Claims (Class Six).  Roger Mattison and Nancy Mattison are the sole Holders of the Class Six Claims.  In full and final satisfaction of the Mattison Claim, upon the Effective Date, Roger Mattison and Nancy Mattison shall be granted relief from the automatic stay imposed by § 362(a) of the Bankruptcy Code solely to permit Roger Mattison and Nancy Mattison to seek recovery for the Mattison Claim from the proceeds of any insurance policy applicable to the Mattison Claim.  Further, upon the Effective Date, Roger Mattison and Nancy Mattison shall not be entitled to any Distributions under this Plan on account of the Mattison Claim, and Roger Mattison and Nancy Mattison's exclusive source for recovery on the Mattison Claim shall be the proceeds of any applicable insurance policy.  For avoidance of doubt, nothing in this Plan shall Allow the Mattison Claim, and any and all defenses, counterclaims, setoffs, or other rights regarding the Mattison Claim are reserved.  **Such Claim in Class Six is, therefore, Impaired and entitled to vote on the Plan.**

(g)     Treatment of Allowed General Unsecured Claims (Class Seven).  In full and final satisfaction of the Allowed General Unsecured Claims in Class Seven, each Holder of an Allowed General Unsecured Claim in Class Seven shall receive its Pro Rata share of any beneficial interest in the Remaining Assets, including Cash remaining in the Liquidating Trust, after satisfaction of the Allowed Claims in Classes One through Six, Allowed Unclassified Claims, and the Liquidating Trust Expenses, less any Cash reserve required to winddown the Liquidating Trust as reasonably determined by the Liquidating Trustee.  The Liquidating Trustee shall: (i) in accordance with Article 6.16, make the Initial Distributions (as defined below) to Holders of Allowed General Unsecured Claims pursuant to Class Seven; and (ii) make

subsequent Distributions under Class Seven upon a schedule to be determined by the Liquidating Trustee until all Remaining Assets designated for the benefit of Holders of Allowed General Unsecured Claims in Class Seven have been disbursed in accordance with the Plan and this Class Seven. **Such Claims in Class Seven are, therefore, Impaired and entitled to vote on the Plan.**

(h)    <u>Treatment of Interests (Class Eight)</u>.    The Interests in Class Eight are Impaired.  The Holders of Interests in Class Eight shall not receive or retain any property or interest in property on account of such Interests, such Interests shall be cancelled, extinguished, and discharged upon termination of the Liquidating Trust (or at the direction of the Liquidating Trustee), and the Holder of Class Eight Interests shall take nothing under the Plan, <u>provided</u>, <u>however</u>, that all powers and authorities vested in the Interests shall be transferred to the Liquidating Trust and exercisable by the Liquidating Trustee immediately upon the Effective Date until cancelled hereunder. **Such Interests in Class Eight are, therefore, Impaired and deemed not to accept the Plan pursuant to § 1126(g) of the Bankruptcy Code.**

**4.5    Reservation of Rights; No Allowance of Claims**

For the avoidance of doubt, notwithstanding the deemed consolidation under this Plan, the Debtors and/or the Liquidating Trustee reserve all rights to object to any Claim on any basis, and nothing herein shall Allow or be deemed to Allow any Claim, except to the extent a Claim is explicitly Allowed under the Plan by agreement of the Plan Proponents.

**ARTICLE V:
CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING**

The following constitute a non-exhaustive list of risk factors associated with this Plan and its implementation:

- The Plan Proponents can make no assurances that the requisite acceptances to the Plan will be received, and the Plan Proponents may need to obtain acceptances to an alternative plan of liquidation for the Debtors, or otherwise, that may not have the support of the Creditors and/or may be required to liquidate the Estates under chapter 7 of the Bankruptcy Code.

- There is no assurance that the Bankruptcy Court, which may exercise substantial discretion as a court of equity, will confirm the Plan.

- There is no assurance regarding the amount of Cash that will be generated upon liquidation of the Remaining Assets and that will be available to pay Allowed Claims.

- The Plan provides for certain conditions that must be satisfied prior to confirmation and for certain other conditions that must be satisfied prior to the Effective Date. As of the date of the Plan, there can be no assurance that any or all of the conditions in the Plan will be satisfied.

- There can be no assurance that the releases, as provided in Article IX of the Plan, will be granted.  Failure of the Bankruptcy Court to grant such relief may result in a plan of liquidation that differs from the Plan or the Plan not being confirmed.

- There is no assurance regarding whether the Bankruptcy Court will order substantive consolidation of the Estates of the Debtors.

- **THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. NOTHING HEREIN SHALL CONSTITUTE TAX ADVICE.   THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE TAX CONSEQUENCES OF THE PLAN.**

### ARTICLE VI:
### MEANS FOR IMPLEMENTATION OF THE PLAN

**6.1     Vesting and Sale or Other Disposition of Remaining Assets; Liquidating Trust Expenses**

(a)     On the Effective Date, the Remaining Assets shall vest in the Liquidating Trust, free and clear of all Claims, Liens, charges, other encumbrances, or Interests, except for the obligations under this Plan, other than the ISO NE Collateral which shall not vest in the Liquidating Trust and shall remain property of Community Eco Power, LLC, subject to the ISO NE Lien.

(b)     On and after the Effective Date, the Liquidating Trustee may use, acquire, sell, liquidate, and dispose of the Remaining Assets without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions imposed by the Plan, the Confirmation Order, or the Liquidating Trust Agreement.

(c)     On and after the Effective Date, the Liquidating Trustee shall have the exclusive authority to compromise or settle any Claims, Objections, or Causes of Action, underline(provided) that any such compromise or settlement with an aggregate monetary value to the Liquidating Trust that exceeds **$20,000.00** shall be subject to entry of an order from the Bankruptcy Court approving the compromise or settlement upon a motion by the Liquidating Trustee, which such motion shall be considered under the standards applicable to Bankruptcy Rule 9019.

(d)     On and after the Effective Date, the Liquidating Trustee shall be authorized to pay the Liquidating Trust Expenses, in the Liquidating Trustee's reasonable discretion, without further order or notice except as set forth in Article 6.1(e), underline(provided) that nothing in this Plan shall relieve the Debtors or the Liquidating Trustee of any obligation to file post-confirmation operating reports pursuant to applicable law.

21

(e)     After the Effective Date, the Liquidating Trustee and any professionals retained by the Liquidating Trustee or the Debtors shall File in the Chapter 11 Cases for any period after the Effective Date a monthly fee statement (each, a "Fee Statement") setting forth a request for payment and the billing detail for services rendered and actual expenses incurred in that month.  No party may File a Fee Statement more frequently than once a month, and no service of a Fee Statement shall be required except CM/ECF service by Filing on the docket in the Chapter 11 Cases.  The United States Trustee and any Holder of a Class Seven General Unsecured Claim, notwithstanding whether such Claim has been Allowed, shall have the right to object to payment of any amount sought in a Fee Statement by Filing a written objection no later than fourteen (14) days after the Filing of the Fee Statement (a "Fee Objection"), which shall set forth, with specificity as to any particular amounts requested, any objections to a Fee Statement. In the event that no Fee Objection is timely Filed, the Liquidating Trustee shall be authorized to pay 100% of the amount sought in the Fee Statement without further notice or order of the Bankruptcy Court.  In the event of a timely Filed Fee Objection, the Bankruptcy Court shall set a hearing on the Fee Objection, and the Bankruptcy Court shall determine whether to sustain or overrule the Fee Objection, provided that the Liquidating Trustee shall be authorized to pay without further notice or order of the Bankruptcy Court any amounts requested in such Fee Statement that was not subject to the Fee Objection.

## 6.2    Initial Liquidating Trustee

Cynthia Dixey, the controller of the Debtors, shall be the initial Liquidating Trustee.  The Plan Proponents believe that Ms. Dixey is well qualified to serve as the Liquidating Trustee in an efficient and cost-effective manner.  Ms. Dixey shall initially be paid at a rate of $150.00 per hour, subject to annual increases to the extent forth the Liquidating Trust Agreement.  Ms. Dixey's billable time shall not exceed 40 hours per month, unless otherwise ordered by the Bankruptcy Court upon a motion Filed by the Liquidating Trustee.  Subsequent Liquidating Trustees, if any, shall be appointed in accordance with the Liquidating Trust Agreement.

## 6.3    Liquidating Trustee's Counsel

Bernstein Shur Sawyer & Nelson, P.A. and Dentons Bingham Greenebaum LLP shall serve as initial counsel to the Liquidating Trustee, provided that nothing herein shall prevent the Liquidating Trustee from retaining alternative counsel and terminating initial counsel, and provided further that Dentons Bingham Greenebaum LLP's representation of the Liquidating Trustee shall be limited to investigating and pursuing Causes of Action against Insiders, with Bernstein Shur Sawyer & Nelson, P.A. representing the Liquidating Trustee on all other matters after the Effective Date, including, without limitation, pursuing § 547 Causes of Action and Objections.

## 6.4    Insurance

Unless elected otherwise by the Liquidating Trustee, if any Allowed Claim is covered by an insurance policy, such Claim shall first be paid from proceeds of such insurance policy to the extent such proceeds are available, with the balance, if any, treated in accordance with the provisions of the Plan governing the Class applicable to such Claim.

**6.5     Dissolution**

From and after the Effective Date, the Liquidating Trustee shall have the exclusive authority to dissolve a Debtor pursuant to his or her reasonable business judgment, <u>provided</u> that Community Eco Power, LLC shall not be dissolved until all transactions with ISO NE have been completed and Community Eco Power, LLC has been terminated as a market participant.

**6.6     Release of Liens and Security Instruments**

As of the Effective Date, all Liens against ~~any Remaining Assets~~ to be distributed under the Plan shall be fully released, and all of the right, title, and interest of any Holder of such Liens, including any rights to any collateral thereunder, shall attach to and be enforceable solely against any net proceeds of sales of such Remaining Assets. For the avoidance of doubt, all mortgages, deeds of trust, Liens, pledges, or other security interests against any Remaining Assets shall be fully released on the Effective Date without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated Schedules or statements typically filed pursuant to the Uniform Commercial Code.

**6.7     Cancellation of Notes and Instruments**

As of the Effective Date, all notes, agreements, and securities evidencing Claims and the rights thereunder of the Holders thereof, shall, with respect to the Debtors, be canceled and terminated, and such instruments shall evidence no such rights, except the right to receive the Distributions provided for in this Plan.

**6.8     Purpose of Liquidating Trust**

The Liquidating Trust shall be established for the purpose of liquidating the Remaining Assets, prosecuting any Causes of Action transferred to the Liquidating Trust to maximize recoveries for the benefit of the Holders of Claims, and making Distributions in accordance with the Plan and Liquidating Trust Agreement, with no objective to continue or engage in the conduct of a trade or business in accordance with Treas. Reg. § 301.7701-4(d). The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes and, to the extent permitted by applicable law, for state and local income tax purposes, with the Liquidating Trust Beneficiaries treated as grantors and owners of the trust.

In connection with the consummation of this Plan, the Debtors and the Liquidating Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements. **All Holders of Claims entitled to Distributions under the Plan, as a condition to receiving any Distribution, shall provide the Liquidating Trustee with a completed and executed Tax Form W-8 or Tax Form W-9, or similar form within sixty (60) days of a written request by the Liquidating Trustee or be forever barred from receiving a Distribution.**

**6.9      Preservation of All Causes of Action and Standing**

In accordance with § 1123(b) of the Bankruptcy Code, the Liquidating Trust shall be exclusively vested with, retain, and may enforce and prosecute any and all claims that the Debtors or the Estates may have against any Person or Entity that constitute Causes of Action, subject to the provisions of this Plan. The Liquidating Trustee shall have standing on behalf of the Debtors and the Estates for the purposes of investigating, pursuing, prosecuting, settling, collecting, litigating, and/or recovering any Remaining Assets that the Debtors or the Estates have or may pursue, subject to the provisions of this Plan.

**6.10      Effectuating Documents and Further Transactions**

On and after the Effective Date, the Liquidating Trustee shall be authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of this Plan and the transactions contemplated thereby, in each case, in the name of and on behalf of the Debtors and the Liquidating Trust, without the need for any approvals, authorization, or consents, except those expressly required pursuant to the Plan.

**6.11      Insurance Policies**

(a)      **Insurance Policies Remain In Force.**  Up to and including their policy expiration date(s), any and all insurance policies in effect as of the Effective Date, shall remain in full force and effect according to their terms and the coverage obligations of the insurers and third-party administrators under such insurance policies shall continue following the Effective Date (including any obligations to pay, defend and process insured claims).

(b)      **D&O Insurance Policies; Employment Practice Liability Policies; Similar Policies.**   Nothing contained in this Plan shall affect or impair the rights of any non-Debtor insured persons covered under any D&O insurance policy, employment practices or similar liability insurance policy (including, without limitation, policies for the benefit of the Debtors' directors, officers, employees, members, managers, or similar persons who served in such capacity either before or after the Petition Date).

**6.12      Dissolution of Creditors' Committee**

Upon and after the Effective Date, the Creditors' Committee shall continue in existence and have standing and capacity solely to prepare and prosecute applications for the payment of Professional Fee Claims incurred by the Creditors' Committee's Professionals. Following the completion of the foregoing, the Creditors' Committee shall be dissolved, and the members of the Creditors' Committee shall be discharged from any further authority, duties, responsibilities, and obligations related to, or arising from, the Chapter 11 Cases.

**6.13      Transfer of Privilege; No Waiver**

On the Effective Date, all of the Debtors' evidentiary privileges, including the attorney-client privilege and work-product doctrine, shall be deemed transferred to the Liquidating Trust. Nothing herein shall be deemed a waiver of the Debtors' or the Estates' rights of privilege.

### 6.14    Records

Upon the Effective Date, the Liquidating Trustee may retain those documents maintained by the Debtors in the ordinary course of business and which were not otherwise transferred to a third party prior to the Effective Date.  After the Effective Date, the Liquidating Trustee shall be authorized to destroy any documents he or she deems necessary or appropriate in his or her reasonable judgment without further order from the Bankruptcy Court; provided, however, that the Liquidating Trustee shall not destroy any documents, including, but not limited to, tax documents, that the Liquidating Trust is required to retain under applicable law.

### 6.15    Final Decree

Notwithstanding anything in the Bankruptcy Code, Bankruptcy Rules, or Local Rules to the contrary, at any time following the Effective Date, the Liquidating Trustee shall be authorized to file a motion for entry of a final decree closing the Chapter 11 Cases.

### 6.16    Interim Distributions; Disputed Claim Reserve

The Liquidating Trustee shall make an initial interim Distribution (the "Initial Distribution") to Holders of Allowed General Unsecured Claims in Class Seven from available Cash no later than the sixtieth (60th) day after the Effective Date.  For purposes of the Initial Distribution, the Liquidating Trustee shall: (i) estimate the amount of each Disputed Claim in Class Seven at such time; and (ii) reserve: (y) sufficient Cash (the "Disputed Claim Reserve") to make the Pro Rata Initial Distribution to the Holders of Disputed Claims in Class Seven if such Disputed Claims become Allowed Claims, and (z) sufficient Cash to fund any remaining Liquidating Trust Expenses.  Following the Initial Distribution, the Liquidating Trustee shall make subsequent Distributions on an interim basis to Holders of Allowed General Unsecured Claims in Class Seven (including disbursing Cash from the Disputed Claim Reserve to the extent such Cash no longer warrants reservation) on a rolling basis as soon as practicable in the Liquidating Trustee's reasonable discretion.

### 6.17    Intercompany Claims

Entry of the Confirmation Order shall constitute an order Disallowing all Intercompany Claims in their entirety.

### ARTICLE VII:
### EXECUTORY CONTRACTS

### 7.1    Rejection of Executory Contracts and Unexpired Leases

**Except for any Executory Contracts of the Debtors: (i) that previously were assumed or rejected by a Final Order of the Bankruptcy Court pursuant to § 365 of the**

Bankruptcy Code; (ii) as to which a motion for approval of the assumption or rejection of such Executory Contract has been Filed and served prior to, and remains pending as of, the Effective Date; or (iii) that constitute the ISO NE Contracts, every Executory Contract entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms (collectively, the "<u>Rejected Contracts</u>") shall be deemed rejected in accordance with § 365 of the Bankruptcy Code effective immediately as of entry of the Confirmation Order, <u>provided</u> that those Executory Contracts listed on <u>Exhibit C</u> hereto shall not be rejected upon entry of the Confirmation Order, but rather shall be rejected effective as of the rejection date set forth in <u>Exhibit C</u>.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections, pursuant to § 365 of the Bankruptcy Code, with the effective date of such rejection to be determined in accordance with the foregoing paragraph and <u>Exhibit C</u> (as applicable).

### 7.2     Bar Date for Rejection Damages Claims

If the rejection of an Executory Contract pursuant to the Plan or otherwise gives rise to a Claim by the other party to such Executory Contract, such Claim shall be forever barred and shall not be enforceable against the Debtors, the Estates, and the Liquidating Trust unless a Proof of Claim is Filed with the Bankruptcy Court on or before the Rejection Damages Bar Date or such earlier date as has been set by an order of the Bankruptcy Court.  Allowed Rejection Claims shall be classified as General Unsecured Claims in Class Seven of the Plan.

## ARTICLE VIII:
## <u>PROVISIONS GOVERNING RESOLUTION OF CLAIMS AND DISTRIBUTION OF REMAINING ASSETS</u>

### 8.1     Right to Object to Claims.

The Liquidating Trustee shall have exclusive authority, but not the obligation, to do any of the following with respect to any Claims or Interests after the Effective Date: (i) File, withdraw, or litigate to judgment, Objections to and requests for estimation of Claims; (ii) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court, subject to the limitations set forth in this Plan or the Confirmation Order; and (iii) administer and adjust the Claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court or any other party.  The Liquidating Trustee shall succeed to any pending Objections to Claims filed by the Debtors prior to the Effective Date and shall have and retain any and all rights and defenses the Debtors had immediately prior to the Effective Date with respect to any Disputed Claim.

### 8.2     Distribution Provisions

(a)     **Distributions to be Made and Adequate Reserves**. The Liquidating Trustee shall be responsible for making Distributions under the Plan, except those required

before the Effective Date, which the Debtors shall make.  The Liquidating Trustee shall establish and maintain a reasonable reserve of Cash to satisfy anticipated Liquidating Trust Expenses until the Liquidating Trust is dissolved.

(b)     **No Liability**.  The Liquidating Trustee shall only be required to act and make Distributions in accordance with the terms of the Plan, the Liquidating Trust Agreement, and related documents.  Except on account of gross negligence, fraud, illegality, or willful misconduct, the Liquidating Trustee shall have no: (i) liability to any party for actions taken in accordance with the Plan or in reasonable reliance upon information provided to him or her in accordance with the Plan, the Liquidating Trust Agreement and related documents; or (ii) obligation or liability for Distributions under the Plan to any party who does not hold a Claim against the Debtors as of the Effective Date or any other date on which a Distribution is made or who does not otherwise comply with the terms of the Plan, the Liquidating Trust Agreement, and related documents.

(c)     **Distributions on Account of Disputed Claims**.  Except as otherwise provided in the Plan, a Final Order, or as agreed between the relevant parties, Distributions on account of Disputed Claims, if any, that become Allowed, shall be made by the Liquidating Trustee at such periodic intervals as the Liquidating Trustee determines to be prudent in his or her discretion.

(d)     **No Distributions Pending Disputes**.  (a) No Distribution shall be made with respect to any Disputed Claim until such Claim becomes an Allowed Claim; and (b) unless agreed otherwise by the Liquidating Trustee, no Distribution shall be made to any Person that holds both an Allowed Claim and a Disputed Claim, or any Person that is or may be the subject of a Cause of Action, until such Person's Disputed Claim and/or the Cause of Action (as applicable) have been resolved by agreement with the Liquidating Trustee or by a Final Order.  Upon a Disputed Claim becoming an Allowed Claim, such Allowed Claim shall be entitled to Distributions in accordance with its treatment under this Plan, and where such treatment provides for Cash payment on the Effective Date for such Claim, payment shall be made as soon as practicable after becoming an Allowed Claim.

(e)     **Unclaimed Distributions**.  Any Person and/or Entity that fails to claim any Cash within sixty (60) days from the date upon which a Distribution is first made to such Person and/or Entity shall forfeit all rights to all Distributions to such Person and/or Entity under the Plan, and the Liquidating Trustee shall be authorized to cancel any Distribution that is not timely claimed.  Upon forfeiture, the Holder of such Claim or Interest shall be irrevocably waived and forever barred against the Debtors, the Estates, and the Liquidating Trust.

(f)     **Delivery of Distributions and Undeliverable Distributions to Holders of Claims**.  Distributions to Holders of Allowed Claims shall be made to Holders of record as of the date of a Distribution by the Debtors or the Liquidating Trustee (as applicable), as set forth on the latest date of the following documents: (a) to the address of payment set forth on any of the proofs of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no proof of Claim is Filed); (b) at the addresses set forth in any written notices of address changes delivered to the Debtors after the date of any related proof of

Claim and prior to the Effective Date; and (c) at the addresses reflected in the Schedules if no proof of Claim has been Filed and the Debtors has not received a written notice of a change of address prior to the Effective Date.

(g)     **Undeliverable Distributions**. The Liquidating Trustee, may, in his or her sole discretion, make only one attempt to make the Distributions contemplated under the Plan to a Holder.  The Liquidating Trustee may, but shall have no obligation to, attempt to locate Holders of undeliverable or Unclaimed Distributions to determinate an alternative address for Distributions.  Any Distributions returned to the Liquidating Trustee as undeliverable or the like shall remain in the possession of the Liquidating Trust, and the Liquidating Trustee reserves the right not to make further Distributions to such Holder.

(h)     **De Minimis Distributions**.  If any individual Distribution under the Plan to the Holder of an Allowed Claim would be less than **$25.00**, the Liquidating Trustee may, but is not required to, cancel such Distribution.

(i)     **Remainder Amounts after Final Distribution**.  After final Distributions have been made in accordance with the terms of the Plan, if the aggregate amount of Unclaimed Distributions and undeliverable Distributions is less than **$5,000.00**, in lieu of making additional Distributions, the Liquidating Trustee may donate such amount to the American Bankruptcy Institute, Anthony H.N. Schnelling Endowment Fund, or another not for-profit, non-religious organization as determined by the Liquidating Trustee.

## ARTICLE IX:
## RELEASES, INJUNCTION, AND RELATED PROVISIONS

**9.1     Releases by the Debtors**

**As of the Effective Date, for good and valuable consideration, including the contributions of the Released Parties in facilitating the administration of the Chapter 11 Cases and other actions contemplated by the Plan and the other contracts, instruments, releases, agreements, or documents executed and delivered in connection with the Plan, the Released Parties are deemed forever released and discharged by the Debtors and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including, but not limited to, any derivative claims, asserted or assertable on behalf of the Debtors or the Estates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, that the Debtors, the Estates, or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, the Plan, the Disclosure Statement, or related agreements, instruments, or other documents, including, but not limited to, any rights or remedies under § 506 of the Bankruptcy Code, other than Claims or liabilities to the extent arising out of or relating to any act or omission of a Released Party that constitutes gross**

negligence, actual fraud, or willful misconduct, or criminal conduct, as determined by a Final Order by a court of competent jurisdiction.

**9.2     Exculpation and Limitation of Liability**

(a)     **The Exculpated Parties shall neither have nor incur any liability to any Entity or Person for any claims or causes of action arising on or after the Petition Date and before the Effective Date for any act taken or omitted to be taken in connection with, or related to: (i) the Chapter 11 Cases; (ii) formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or effecting the consummation of the Plan, the Disclosure Statement, or any other contract, instrument, release, or other agreement or document created or entered into in connection with the Plan; (iii) any other prepetition or postpetition act taken or omitted to be taken in connection with preparation of or in immediate contemplation of the Chapter 11 Cases; or (iv) the approval of the Disclosure Statement or confirmation or consummation of the Plan; provided, however, that the foregoing provisions shall have no effect on the liability of any Entity or Person that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted gross negligence or willful misconduct; provided, further, however, that the Exculpated Parties shall each be entitled to rely upon the advice of counsel concerning their duties pursuant to, or in connection with, the above-referenced documents, actions, or inactions.**

(b)     **The Exculpated Parties have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and Distributions pursuant to the Plan, and, therefore, are not, and on account of such Distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such Distributions made pursuant to the Plan.**

**9.3     Injunctions**

(a)     **EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO THE PLAN OR THAT ARE SUBJECT TO THE EXCULPATORY PROVISIONS OF ARTICLES 9.02, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (II) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (III) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND**

29

**AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATE OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (IV) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED, OR SETTLED PURSUANT TO THE PLAN; AND (V) ACTING OR PROCEEDING IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM WITH THE PROVISIONS OF THE PLAN TO THE FULL EXTENT PERMITTED BY APPLICABLE LAW.**

## ARTICLE X:
## CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

**10.1    Conditions Precedent to Confirmation**

It shall be a condition to confirmation hereof that the Bankruptcy Court shall have entered the Confirmation Order in a form and substance acceptable to the Plan Proponents.

**10.2    Conditions Precedent to the Effective Date**

It shall be a condition to the Effective Date that the following provisions, terms, and conditions shall have been satisfied:

(a)    The Bankruptcy Court shall have entered the Confirmation Order in a form and substance acceptable to the Plan Proponents, and the Confirmation Order shall be a Final Order; and

(b)    No order of a court of competent jurisdiction shall have been entered and remain in effect restraining the Plan Proponents from consummating the Plan and the transactions contemplated therein.

**10.3    Effect of Failure of Conditions**

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan shall: (i) constitute a waiver or release of any claims by or Claims against the Debtors or the Estates; (ii) prejudice in any manner the rights of the Debtors, any Holders of a Claim or Interest or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, the Creditors' Committee, any Creditors or Interest Holders, or any other Entity in any respect.  If the Effective Date does not occur, nothing herein shall prevent the Debtors or the Creditors' Committee from filing a new proposed plan of liquidation.

**10.4    Filing of Notice of the Effective Date.**

On the Effective Date, or as shortly thereafter as reasonably practicable, the Debtors shall file a notice of the Effective Date with the Bankruptcy Court.  The Debtors shall not be required

to serve the notice of Effective Date on any party other than those parties that receive notice via the Bankruptcy Court's CM/ECF filing system or that have requested notice under Bankruptcy Rule 2002.

## ARTICLE XI:
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN

### 11.1    Modification and Amendments

Except as otherwise specifically provided herein, the Plan Proponents reserve the right to modify the Plan as to material terms and seek confirmation consistent with the Bankruptcy Code and Bankruptcy Rules and, as appropriate, not re-solicit votes on such modified Plan.   In addition, prior to the Effective Date, the Plan Proponents may make appropriate technical adjustments and modifications to the Plan, without further order or approval of the Bankruptcy Court; provided, however, that such technical adjustments and modifications do not adversely affect in a material way the treatment of Holders of Allowed Claims or Interests.

### 11.2    Effect of Confirmation on Modifications

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the commencement of the solicitation of votes on the Plan are approved pursuant to § 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### 11.3    Revocation or Withdrawal of the Plan

The Plan Proponents reserves the right to revoke or withdraw the Plan before the Effective Date, without prejudice to the Plan Proponents, having the ability or right to file another plan in the future.

## ARTICLE XII:
## JURISDICTION

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction over the Chapter 11 Cases to the maximum extent as is legally permissible, including, without limitation, for the following purposes:

(a)    To allow, disallow, determine, liquidate, classify or establish the priority or secured or unsecured status of or estimate any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Interests;

(b)    To ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(c)      To determine any and all applications or motions pending before the Bankruptcy Court on the Effective Date of the Plan, including without limitation any motions for the rejection, assumption or assumption and assignment of any Executory Contract;

(d)      To consider and approve any modification of the Plan, remedy any defect or omission, or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order;

(e)      To determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan or any entity's obligations in connection with the Plan, or to defend any of the rights, benefits, Estate property transferred, created, or otherwise provided or confirmed by the Plan or the Confirmation Order or to recover damages or other relief for violations thereof;

(f)      To consider and act on the compromise and settlement of any claim or cause of action by or against the Debtors, the Estates, the Creditors' Committee, or the Liquidating Trustee;

(g)      To decide or resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters, or grant or deny any applications involving the Debtors, or the Estates that may be pending on the Effective Date or that may be brought by the Debtors, or any other related proceedings by the Debtors, and to enter and enforce any default judgment on any of the foregoing;

(h)      To decide or resolve any and all applications for Professional Fee Claims;

(i)      To issue orders in aid of execution and implementation of the Plan to the extent authorized by § 1142 of the Bankruptcy Code or provided by the terms of the Plan;

(j)      To decide issues concerning the federal or state tax liability of the Debtors which may arise in connection with the confirmation or consummation of the Plan;

(k)      To interpret and enforce any orders entered by the Bankruptcy Court in the Chapter 11 Cases; and

(l)      To enter an order closing the Chapter 11 Cases when all matters contemplating the use of such retained jurisdiction have been resolved and satisfied.

## ARTICLE XIII.
## MISCELLANEOUS

**13.1    Exemption from Taxes**

To the extent the Plan and the Confirmation Order provide for: (a) the issuance, transfer or exchange of notes, debt instruments and equity securities under or in connection with the Plan; and (b) the creation, execution, and delivery of agreements or other documents creating or evidencing the formation of the Liquidating Trust and any right or interest in the Liquidating Trust, pursuant to § 1146 of the Bankruptcy Code and the Plan, any such act described or contemplated herein shall not be subject to any stamp tax, transfer tax, filing or recording tax, or other similar tax.

### 13.2    Compliance with Tax Requirements

Notwithstanding any other provision of the Plan, each Holder of an Allowed Claim that has received a Distribution under the Plan shall have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any Governmental Unit, including income, withholding and other tax obligation, on account of such Distribution.

**The Liquidating Trustee shall be authorized to require each Holder of a Claim to provide it with an executed Form W-9, Form W-8, or any other tax form, documentation or certification as may be requested by the Liquidating Trustee as a condition precedent to being sent a Distribution. If a Holder of an Allowed Claim does not provide the Liquidating Trustee with an executed Form W- 9, Form W-8 or other requested tax form within 90 days after the date of the Liquidating Trustee's initial request, the Liquidating Trustee may, in his or her sole discretion: (a) make such Distribution net of applicable withholding; or (b) reserve such Distribution, in which case (i) such Holder shall be deemed to have forfeited the right to receive any Distribution under the Plan, (ii) any such Distribution shall revert to the source of such Distribution for Distribution on account of other Allowed Claims, and (iii) the Claim of the Holder originally entitled to such Distribution shall be irrevocably waived and forever barred without further order of the Bankruptcy Court. The Liquidating Trustee reserves the right to allocate and distribute all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens, and similar encumbrances.**

### 13.3    Defenses and Setoff

Nothing contained in this Plan shall constitute a waiver or release by the Debtors, the Estates, the Creditors' Committee, or the Liquidating Trustee of any right rights in respect of legal and equitable objections, defenses, setoffs, or recoupment. To the extent permitted by applicable law, the Liquidating Trustee may, but shall not be required to, set off or recoup against any Claim and the payments or other Distributions to be made under the Plan in respect of such Claim, claims of any nature whatsoever that arose before the Petition Date that the Debtors, the Estates, the Creditors' Committee, or the Liquidating Trustee may have against the Holder of such Claim or Interest.

### 13.4    Governing Law

Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in

33

accordance with, the laws of the Commonwealth of Massachusetts, without giving effect to the principles of conflicts of law thereof.

**13.5     Successors and Assigns**

The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

**13.6     Debtors' Post-Confirmation Management**

On and after the Effective Date, the Debtors' existing management (the "Managers") shall continue to act solely to the limited extent necessary to: (i) facilitate the filing of tax returns; and (ii) complete any other tasks the Managers reasonably determines are necessary to wind down the Debtors and the Estates which are not the responsibility of the Liquidating Trustee.   Fees and expenses related to the foregoing shall be deemed and funded as Liquidating Trust Expenses, subject to the notice, Filing, and objection provisions of Article 6.1(e) of this Plan prior to payment.

**13.7     Immediate Binding Effect**

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), and 7062 and/or any other Bankruptcy Rule, upon the occurrence of the Confirmation Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, any and all Holders of Claims and Interests (irrespective of whether such Claims or Interests are Allowed or Disallowed or were voted to accept or reject the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

**13.8     Severability of Plan Provisions**

If, before the Effective Date, any term or provision of the Plan is held by the Bankruptcy Court or any other court exercising jurisdiction to be invalid, void or unenforceable, the Bankruptcy Court or other court exercising jurisdiction shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted so long as such term or provision is acceptable to the Debtor.   Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.   **The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (iii) non-severable and mutually dependent.**

### 13.9    Exhibits

All exhibits and documents to the Plan are incorporated into and are a part of the Plan as if set forth in full in the Plan.  The Plan Proponents reserve the right to amend the exhibits to the Plan any time prior to confirmation, subject to reasonable notice.

### 13.10    No Admissions

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by the Debtors, the Estates, the Creditors' Committee, or the Liquidating Trustee, with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety of the classification of any Claim or Interest.

### 13.11    Conflicts Among Plan Documents

To the extent of a conflict between the Plan and/or the Disclosure Statement and the Confirmation Order, the Confirmation Order shall govern.

### 13.12    Recommendation

In the opinion of the Plan Proponents, the Plan is superior and preferable to the alternatives described in the Disclosure Statement.   Accordingly, the Plan Proponents recommend that Holders of Claims entitled to vote on the Plan vote to accept the Plan and support confirmation.

Dated: December 7, 2022

/s/ Richard Fish
RICHARD FISH
Chief Executive Officer
*Community Eco Power, LLC, Community Eco Springfield, LLC, and Community Eco Pittsfield, LLC*

/s/ Richard Pulsifer
Richard Pulsifer
Chairperson
*Official Committee of Unsecured Creditors*

**Exhibit A**

**Liquidating Trust Agreement**

EXHIBIT

A

## LIQUIDATING TRUST AGREEMENT

**THIS LIQUIDATING TRUST AGREEMENT** (the "Trust Agreement") is made and entered into as of [●], 2022, by and among Community Eco Power, LLC ("CE Power"), Community Eco Springfield, LLC ("CE Springfield"), and Community Eco Pittsfield, LLC ("CE Pittsfield" and, together with CE Springfield and CE Power, the "Debtors"), on the one hand, and Cynthia Dixey, solely in her capacity as the trustee of the Liquidating Trust (the "Trustee" and, together with the Debtors, the "Parties"), on the other hand.

**WHEREAS**, on June 25, 2021, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"); and

**WHEREAS**, the Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court") has an entered an order (the "Confirmation Order") confirming Community Eco Power, LLC, Community Eco Springfield, LLC, Community Eco Pittsfield, LLC and the Official Committee of Unsecured Creditors' Joint Plan of Liquidation Dated December 7, 2022, the "Plan"); and

**WHEREAS**, the Plan provides for the establishment of the Liquidating Trust for the purpose of receiving the Estates' Remaining Assets (collectively, the "Liquidating Trust Assets"), liquidating the Liquidating Trust Assets, and distributing the proceeds of the Liquidating Trust Assets as provided for by the terms of the Plan, the Confirmation Order, and this Trust Agreement; and

**WHEREAS**, it is desired that the powers of the Trustee in regard to the Liquidating Trust and the purposes of the Liquidating Trust be limited so that the Liquidating Trust created hereby qualifies as a liquidating trust for federal income tax purposes; and

**WHEREAS**, pursuant to the Confirmation Order and the Plan, the Trustee is to serve as trustee of the Liquidating Trust, subject to Bankruptcy Court oversight and other consultation obligations to the extent set forth herein or in the Plan and Confirmation Order.

**NOW THEREFORE**, it is agreed between the Parties as follows:

## ARTICLE ONE

1.1     Terms Defined.  All capitalized terms, singular or plural, used in this Trust Agreement, unless defined otherwise herein, shall have the meaning ascribed to such terms in the Plan.  In addition, the following terms shall have the following meanings when used herein:

(a)     "Beneficiaries" shall mean the Holders of Allowed Claims under the Plan to whom Distributions must be made pursuant to the Plan and Confirmation Orders

(b)     "Net Proceeds" shall mean the Cash component, if any, of the Liquidating Trust Assets and Cash proceeds realized from the sale or liquidation of the

Liquidating Trust Assets, **minus** the Liquidating Trust Expenses.

(c)     "Trust Estate" shall mean all of the Liquidating Trust Assets transferred to the Liquidating Trust (and the proceeds therefrom) and held from time to time by the Trustee pursuant to this Trust Agreement.

1.2     Other Definitional Provisions.  The words "hereof," "herein" and "hereunder" and words of similar import when used in this Trust Agreement shall refer to this Trust Agreement as a whole and not to any particular provision of this Trust Agreement, and section references are to this Trust Agreement unless otherwise specified.

## ARTICLE TWO
## Authority of and Certain Directions to Trustee; Declaration of Liquidating Trust

2.1     Creation of the Liquidating Trust.  The Debtors hereby create the Liquidating Trust for the benefit of the Beneficiaries, and the Liquidating Trust is subject to the jurisdiction of the Bankruptcy Court and is subject to the terms and conditions of the Plan and the Confirmation Order.

2.2     Purpose of Liquidating Trust.  The Liquidating Trust is organized for the sole purpose of collecting and distributing the Liquidating Trust Assets in accordance with the Plan and the Confirmation Order, and with the purpose of effectuating and consummating the Plan and the Confirmation Order, and with no objective to engage in the conduct of a trade or business.  The Trustee shall report the Liquidating Trust for federal income tax purposes as a liquidating trust in accordance with Treasury Regulations, Section 301.7701-4(d) and as a "grantor trust" subject to the provisions of Subchapter J, Subpart E of the Internal Revenue Code of 1986, as amended (the "IRS Code").  The Beneficiaries of the Liquidating Trust shall be treated as the grantors and deemed owners of the Liquidating Trust for income tax purposes under Section 677 of the IRS Code.  The Trustee is hereby authorized to take all reasonable and necessary action to carry out the express purpose of the Liquidating Trust, to conserve and protect the Trust Estate, and to distribute the Net Proceeds to the Beneficiaries in a prompt, efficient, and orderly fashion in accordance with the provisions hereof, and in accordance with the Plan and the Confirmation Order.

2.3     Transfer to Trustee.  Subject to the terms of the Plan and the Confirmation Order, the Debtors hereby grant unto the Trustee all of their rights, title, and interest in and to the Liquidating Trust Assets, in trust for the uses and purposes stated herein, and the Trustee hereby accepts such Liquidating Trust Assets and such trust.  The transfer of the Liquidating Trust Assets to the Liquidating Trust shall occur as provided for by the terms of the Plan and the Confirmation Order.  Such transfer shall be treated as a transfer of the Liquidating Trust Assets to the Beneficiaries for all purposes under the IRS Code.  The Liquidating Trust Assets shall be valued for income tax purposes on a consistent basis and such value shall be used for all applicable tax reporting requirements.  The information, representations of value, and/or other documents provided by the Debtors shall be the basis for valuing the Liquidating Trust Assets.

2.4     Title to Trust Estate.  Title to the Trust Estate shall vest in the Trustee without any

requirement of filing or recording of documents of conveyance under otherwise applicable non-bankruptcy law.  The Trustee shall hold legal title to all Liquidating Trust Assets at any time constituting a part of the Trust Estate and shall hold the Liquidating Trust Assets in trust to be administered and distributed pursuant to the terms of this Trust Agreement, the Plan, and the Confirmation Order, for the benefit of the Beneficiaries.  The Trustee is authorized to make Disbursements and other payments from the Trust Estate in accordance with the provisions of this Trust Agreement, and in accordance with and subject to the terms and conditions of the Plan and the Confirmation Order.

2.5    <u>Documents to be Executed by Trustee</u>.  The Trustee is hereby authorized to execute and deliver, or accept delivery on behalf of the Liquidating Trust, the following documents:

(a)    Any and all documents necessary to enable the Liquidating Trust Assets or any proceeds thereof to be registered in the name of the Trustee on behalf of the Liquidating Trust, as the same shall be necessary or advisable;

(b)    Any and all other documents as may be necessary or appropriate for consummation of the transactions contemplated by the Plan, the Confirmation Order, or this Trust Agreement including, but not limited to, the filing of any and all complaints, answers, discovery papers, settlement agreements, releases, and other documents necessary or appropriate to prosecute or settle any claims or issues arising out of or relating to the Liquidating Trust Assets; and

(c)    Any and all documents as may be necessary or appropriate to consummate the Plan and/or comply with Confirmation Order.

2.6    <u>Instruments of Further Assurance; Power of Attorney</u>.  The Debtors and their agents, employees, representatives, and attorneys shall, upon reasonable request of the Trustee, execute, acknowledge, and deliver such further instruments and do such further acts as may be necessary or proper to effectively carry out the purposes of this Trust Agreement.  In addition, the Debtors hereby grant to the Trustee a durable power of attorney to execute such documents and do such things as may be reasonable or necessary on behalf of the Debtors to carry out the purpose of the Trust as called for under this Trust Agreement, the Plan, and the Confirmation Order.

## <u>ARTICLE THREE</u>
### Beneficial Interests

3. 1    The beneficial interests hereunder shall be governed solely by the Plan, the Confirmation Order, all compromises and orders incorporated into the Plan, any orders in aid of consummation or effectuation thereof, and, in particular, the determination of all Allowed Claims.

3.2    In determining the Beneficiaries hereunder, the Trustee shall have the right,

pursuant to and subject to the Plan and the Confirmation Order, to object to claims, and rely upon the public records of the Bankruptcy Court and of any other court that may, by appeal or otherwise, become involved in any part of the chapter 11 proceedings of the Debtors.

### ARTICLE FOUR
### Collection, Application, and Distribution of Trust Estate

4.1     Collection of Trust Moneys.  All Liquidating Trust Assets, to the extent not in the form of Cash, shall be collected by the Trustee, reduced to Cash whenever practicable, and held as a part of the Trust Estate.

4.2     Distributions by Trustee.  The Trustee shall, from time to time, in keeping with the availability of Cash in the Trust Estate, distribute available Cash to the Beneficiaries pursuant to the provisions of the Plan and the Confirmation Order (provided that when making any such interim Distributions, the Trustee shall maintain a sufficient Cash reserve to fund Liquidating Trust Expenses).  All Distributions shall be made in accordance with, and subject to the requirements of, the Plan and the Confirmation Order.

4.3     Unclaimed Distributions.  Except as otherwise set forth in the Plan, any Entity that fails to claim any Cash shall forfeit all rights to any Distributions under the Plan, and the Trustee shall be authorized to cancel any Distribution that is not timely claimed.  Upon forfeiture, the Claim of any Beneficiary with respect to such funds shall be irrevocably waived and forever barred against all of the Debtors, the Estates, and the Liquidating Trust, to the extent set forth in the Plan.

4.4     Taxes, Withholding and Other Charges.

(a)     The Beneficiaries of the Trust are responsible for reporting and paying any income tax due on their respective shares of any net income earned by the Trust, whether or not a reserve is established for Disputed Claims.  Each Beneficiary's share of such net income shall be determined pro rata, in accordance with the Plan, on the basis of each Beneficiary's share of the Trust Estate during the relevant time period.

(b)     Notwithstanding any other provision of this Trust Agreement, the Trustee is authorized to pay any taxes on long-term gain on the sale or disposition of any Liquidating Trust Assets, and withholding and paying to the United States and any state income and employment taxes required to be withheld from wages paid to employees, if any, of the Liquidating Trust.

(c)     Notwithstanding the foregoing, the Trustee shall have the right (but not the obligation) with respect to the United States or any state or political subdivision or entity to contest the imposition of any tax or other charge.

4.5     Payment of Liquidating Trust Expenses.  The Trustee shall pay, from the Trust Estate, the Liquidating Trust Expenses, which shall include, but are not limited to, the reasonable

4

fees, costs, and expenses of the Liquidating Trust, including insurance, professional fees, and compensation to the Trustee. Such payments may be made in accordance with the Plan and Confirmation Order.

4.6    Reports to Beneficiaries. As soon as practicable after the end of each fiscal year of the Trust and after termination of the Liquidating Trust, the Trustee shall submit a written Form 1041 informational return with allocation of income among Beneficiaries and account to those Beneficiaries who request it showing the assets and liabilities of the Liquidating Trust at the end of such fiscal year or upon termination and the receipts and disbursements of the Trustee for such fiscal year.

**ARTICLE FIVE**
**Powers and Duties of the Trustee**

5.1    Powers. The Trustee shall hold the legal title to all of the Liquidating Trust Assets at any time constituting a part of the Trust Estate and shall hold such Liquidating Trust Assets in trust to be administered and disposed of by the Trustee pursuant to the terms of this Trust Agreement (and the terms of the Plan and the Confirmation Order) for the benefit of the Beneficiaries, subject to the Plan and the Confirmation Order, and such other orders as may be entered by the Bankruptcy Court relating thereto. The Trustee shall have power to act in such manner as the Trustee may deem necessary or appropriate to conserve and protect the Trust Estate and/or to confer the benefits intended by this Trust Agreement on the Beneficiaries, and, without limitation, the Trustee shall have, without the need to seek Bankruptcy Court approval, the following specific powers, authority, and other matters:

(a)    To collect and receive any and all money and other property of whatsoever kind or nature due to or owing or belonging to the Liquidating Trust and to give full discharge and acquittance therefor;

(b)    To open bank accounts with the right to make withdrawals therefrom and to obtain and maintain all relevant insurance in relation to the Debtors and the Liquidating Trust, and tax identification number(s) for the Liquidating Trust;

(c)    Subject to the Plan and the Confirmation Order, to institute or defend all Causes of Action and proceedings for interpleaders to collect money, object to claims, or otherwise, and to take such other action as the Trustee may deem necessary or desirable to prevent a default pertaining to instruments relating to or forming a part of the Trust Estate;

(d)    To perform any act authorized, permitted, or required under any instruments relating to or forming a part of the Trust Estate whether in the nature of an approval, consent, demand, or notice thereunder or otherwise;

(e)    To cancel, terminate, or amend any instruments relating to or forming a part of the Trust Estate;

(f)     Subject to the Plan and the Confirmation Order, to employ agents, attorneys, accountants, and consultants, and to confer upon them such authority as the Trustee may deem expedient, and to pay reasonable compensation therefore;

(g)     To perform all acts authorized, permitted, or required, and to take such other action as the Trustee may deem necessary or desirable to effectuate or consummate the Plan and the Confirmation Order as the same shall pertain to the Liquidating Trust and the Liquidating Trust Assets, including, without limitation, all such power and authority as is necessary to perform acts necessary, permitted, or required pursuant to the Plan and the Confirmation Order, and any compromises, orders, and agreements that are an integral part of the Plan or Confirmation Order as related to the Liquidating Trust and the Liquidating Trust Assets; and

(h)     All powers, abilities, duties, authority, rights, titles, and interests as are granted to the Trustee and the Liquidating Trust, including the right to sell or dispose of the Liquidating Trust Assets, including, subject to the Plan and the Confirmation Order, to prosecute, settle, and/or resolve the Causes of Action, and such other and further rights and powers as may be directed by the Bankruptcy Court as related to the Liquidating Trust and Liquidating Trust Assets.

5.2     <u>Additional Powers and Rights of Trustee</u>.   Subject to any express limitations herein, the Trustee shall have, and may exercise with respect to any and all Liquidating Trust Assets, and in the administration and distribution of the Trust Estate, all powers and rights now or hereafter conferred on trustees by the laws of the Commonwealth of Massachusetts, and all powers and rights permitted or contemplated by the Plan or the Confirmation Order or such further order as may be entered by the Bankruptcy Court.

5.3     <u>Limitations on Trustee</u>.   The Trustee shall not at any time, on behalf of the Liquidating Trust, enter into or engage in any business, nor shall the Trustee exercise its investment powers beyond making investments in demand and time deposits in banks, savings, or similar financial institutions, or temporary investments such as short-term certificates of deposit or treasury bills.  The Trustee shall be subject to all terms and conditions of the Plan, the Confirmation Order, and such further orders, on notice to the Trustee, as may be entered by the Bankruptcy Court.

5.4     <u>Settlement of Litigation</u>.   Other than as provided for by the Plan or the Confirmation Order, the Trustee shall have full and complete discretion in settling any Objections or Causes of Action (including actions in which one or more of the Debtors may be named as a defendant) and in relation to selling or discounting any Liquidating Trust Asset.

## ARTICLE SIX
### Concerning the Trustee

6.1    <u>Generally</u>.    The Trustee accepts the Liquidating Trust created by this Trust Agreement and agrees to execute the Trust Agreement upon the conditions hereof, including the following:

      (a)    The Trustee shall serve without bond;

      (b)    The Trustee shall perform: (i) such duties and obligations as are specifically set forth in this Trust Agreement; and (ii) such duties and obligations as are set forth in the Plan and/or the Confirmation Order;

      (c)    The Trustee shall not be responsible in any manner whatsoever for the validity or sufficiency of this Trust Agreement;

      (d)    The Trustee shall be protected in acting upon any paper or document reasonably believed by the Trustee and upon due inquiry appearing to be genuine;

      (e)    The Trustee shall not be liable for any acts or omissions of any agents, representatives, accountants, or attorneys selected by or acting for the Trustee if such agents or attorneys were selected with reasonable care; and

      (f)    The Trustee may consult with legal counsel, accountants, appraisers, consultants, or other professional counsel, and any act or failure to act done or omitted in good faith in accordance with the opinion of any such person and/or counsel shall create no liability on the part of the Trustee.

6.2    <u>Transferee Liabilities/Indemnification</u>.    If any liability shall be asserted against the Liquidating Trust or the Trustee as the transferees of the Liquidating Trust Assets, for acts while carrying out the Trustee's duties as Trustee, on account of any claimed liability of or through one or more of the Debtors, the Trustee may use part or all of the Liquidating Trust Assets as may be necessary in contesting any such claimed liability and in payment, compromise, settlement, and discharge thereof on terms reasonably satisfactory to the Trustee. In no event shall the Trustee be liable for or be required to use Liquidating Trust Assets for such purposes.

## ARTICLE SEVEN
### Protection of Persons Dealing with the Trustee

7.1    <u>Reliance on Statement by Trustee</u>.    Any person dealing with the Trustee shall be fully protected in relying upon the Trustee's certificate that the Trustee has authority to take any action under this Liquidating Trust.

7.2     <u>Application of Money Paid or Transferred to Trustee</u>.  No person dealing with the Trustee shall be required to follow the application by the Trustee of any money or property which may be paid or transferred to the Trustee.

## ARTICLE EIGHT
### Compensation of Trustee

8.1     <u>Amount of Compensation</u>.  The Trustee shall receive compensation for services performed hereunder at the Trustee's regular hourly rates charged for such services as set forth in the Plan and subject to any cap on such compensation in the Plan, provided that the Trustee may receive annual compensation increases of not more than 5%.

8.2     <u>Expenses</u>.  The Trustee shall be reimbursed from the Trust Estate for all fees, costs and expenses reasonably incurred by the Trustee in the performance of the Trustee's duties in accordance with this Trust Agreement.

## ARTICLE NINE
### Successor Trustee

9.1     <u>Resignation and Removal</u>.  The Trustee may resign and be discharged from the Trustee's obligations as Trustee, without cause (or be required to resign with cause), upon: (i) notice to the Debtors; (ii) the Debtors' appointment of a substitute Trustee; and (iii) the filing of a notice of resignation and identification of the substitute Trustee on the docket in the Chapter 11 Cases.

9.2     <u>Acceptance of Appointment by Successor Trustee</u>.   Any successor Trustee appointed shall execute an instrument accepting such appointment hereunder.

## ARTICLE TEN
### Termination

10.1    <u>Termination</u>.  The Liquidating Trust shall terminate upon the fulfillment of its purpose, consummation of the Plan, and the closing of the Chapter 11 Cases, or within six (6) years after the effective date of the Liquidating Trust, whichever shall occur first. Notwithstanding the foregoing, in the event the Trustee shall have been unable, after reasonable efforts, to distribute the Trust Estate within the initial six (6) year term of this Trust Agreement, the Trustee shall have the right to extend the term of the Liquidating Trust for successive one-year renewal terms until the Trust Estate can be fully distributed.

Prior to or contemporaneously with the termination of the Liquidating Trust, the Trustee shall satisfy or provide for payment of all expenses, liabilities, and obligations of the Liquidating Trust known to it and shall distribute the Trust Estate to the Beneficiaries as provided for herein and in accordance with the Plan and the Confirmation Order.

The Trustee shall have a reasonable period of time after the termination of the Liquidating Trust in which to wind up the administration of the Liquidating Trust and to make a

Distribution of the Net Proceeds.  During this period of time, the Trustee shall continue to have, and shall exercise, all powers granted to the Trustee until the Net Proceeds of the Liquidating Trust are distributed in accordance with the Plan, the Confirmation Order, and this Trust Agreement.

## ARTICLE ELEVEN
### Plan and Confirmation Order

11.1    Notwithstanding any provision or term of this Trust Agreement, the Liquidating Trust, the Trustee, the Trust Estate, and all terms and conditions of this Trust Agreement, shall be subject to the terms and conditions of the Plan, the Confirmation Order, and other additional orders as may be entered in relation to the Chapter 11 Cases by the Bankruptcy Court.  In addition, the Liquidating Trust, the Trustee, and the Trust Estate shall be subject to the jurisdiction of the Bankruptcy Court to the extent provided for by the terms of the Plan and the Confirmation Order.

## ARTICLE TWELVE
### Miscellaneous Provisions

12.1    Filing Documents.  This Trust Agreement may be filed or recorded in such office or offices as the Trustee may determine to be necessary or desirable.

12.2    Laws as to Construction.  This Trust Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

12.3    Headings.  The captions and headings used in this Trust Agreement are for convenience only and do not in any way limit or amplify the terms and provisions hereof.

12.4    Binding Effect.  This Trust Agreement shall inure to the benefit of and be binding upon the Trustee and the Beneficiaries and their respective successors and assigns.

12.5    Severability.  In the event any provision of this Trust Agreement shall be finally determined by a court with jurisdiction to be invalid or unenforceable to any extent, the remainder of this Trust Agreement shall not be affected thereby, unless the invalidity or unenforceability materially changes the purpose of the Trust, in which case the Trust Agreement shall be deemed void in its entirety.

12.6    Notices.  Any notice or other communication by the Trustee to any Beneficiary hereunder shall be deemed to have been sufficiently given, for all purposes, if given by being deposited, postage prepaid, in a post office or letter box addressed to such Beneficiary at its address as shown on the pleadings or other instruments on record with the Bankruptcy Court or via electronic mail to the address reasonably believed to be correct for such Beneficiaries.  Any notices to the Trustee shall, in respect to the initial Trustee, be made by electronic mail to:

Cynthia Dixey
[                    ]

-and-

D. Sam Anderson, Esq.
Bernstein, Shur, Sawyer & Nelson, P.A.
100 Middle Street, P.O. Box 9729
Portland, ME 04104
sanderson@bernsteinshur.com

In seeking Bankruptcy Court approval of any action requiring Bankruptcy Court approval hereunder or under the Plan or Confirmation Order, the Trustee shall not be obligated to provide notice to all creditors of the Debtors; except as otherwise provided in the Plan, notice shall be provided only to the parties named in the matter before the Bankruptcy Court, parties having filed a notice of appearance and demand for service in the Chapter 11 Cases, and the United States Trustee's Office.

12.7    Counterparts and Facsimile Delivery.  This Trust Agreement may be executed in multiple counterparts and may be executed and delivered by facsimile (PDF or its equivalent) copies of signature page(s), each of which shall be deemed to be an original and all of which taken together shall constitute a single instrument.  Subject to entry of the Confirmation Order, this Trust Agreement shall be effective as of the date upon the actual receipt of signed signature pages from each of the signatories hereto.

12.8    Fiscal Year.  The Trust's fiscal year shall end on the last day of December of each calendar year unless the Trustee deems it advisable to establish some other date on which the fiscal year of the Liquidating Trust shall end.

12.9    Title to Trust Estate.  No Beneficiary shall have title to any part of the Trust Estate.  No transfer, by operation of law or otherwise, of the right and interest of any Beneficiary in and to the Trust Estate or hereunder shall operate to terminate this Trust Agreement or the Liquidating Trust or to entitle any successor or transferee of such Beneficiary to an accounting with respect to the Trust Estate or to the transfer to it of title to any part of the Trust Estate.

12.10    Acceptance by Trustee.  The Trustee, by executing this Trust Agreement, accepts the Trust herein created and provided for and accepts all of the rights, powers, privileges, duties, and responsibilities of the Trustee hereunder and agrees to exercise and perform the same subject to the terms of this Trust Agreement and make Distributions to the Beneficiaries in accordance with the provisions of this Trust Agreement.

12.11    Amendment.  This Trust Agreement may be materially amended only upon the entry of an order in the Bankruptcy Court after notice to and an opportunity for hearing by, counsel to the Estates and the Trustee, and after such further notice and hearing as is appropriate.

*[intentionally left blank; signature page follows]*

**IN WITNESS WHEREOF**, the Parties have caused this Trust Agreement to be signed, sealed, and executed, all as of the day and year first above written.

**COMMUNITY ECO POWER, LLC; COMMUNITY ECO SPRINGFIELD, LLC; AND COMMUNITY ECO PITTSFIELD, LLC,**
DEBTORS AND DEBTORS-IN-POSSESSION

By:  _____

      Name:

      Its:

**CYNTHIA DIXEY,**
LIQUIDATING TRUSTEE

By:  _____

      Cynthia Dixey, solely in her capacity as Liquidating Trustee

**Exhibit B**

**Mutual Release Agreement**

**EXHIBIT B**

**MUTUAL RELEASE AGREEMENT**

_____

This MUTUAL RELEASE AGREEMENT (the "Agreement") is entered into pursuant to and in accordance with *Community Eco Power, LLC, Community Eco Springfield, LLC, Community Eco Pittsfield, LLC, and the Official Committee of Unsecured Creditors' Joint Plan of Liquidation Dated December 7, 2022*(the "Plan"), by and among: (i) the Debtors;[1] (ii) the Liquidating Trustee; (iii) SDI; and (iv) Covanta.  The Debtors, the Liquidating Trustee, SDI, and Covanta are collectively referred to herein as the  "Parties."

A.    **SDI Releases**

**As consideration for SDI's consent to the treatment of SDI's Claims in the Plan, SDI's support of the Plan, and such other rights, obligations, and agreements by and among the Debtors, the Creditors' Committee and SDI under the Plan, upon the Effective Date of the Plan, but excluding any rights or obligations arising under the Plan: (i) the Debtors, the Estates, the Debtors' Representatives in their capacities as such, and the Liquidating Trustee, release and forever waive any and all Claims, obligations, actions, suits, rights, debts, accounts, Causes of Action, remedies, avoidance actions, agreements, promises, damages, judgments, demands, defenses, and liabilities against SDI and its Representatives in their capacities as such under any law or court ruling through the Effective Date arising out of, related to, and in connection with the prepetition Debtors, postpetition Debtors, and the Chapter 11 Cases, which release shall include, for avoidance of doubt, any and all derivative Claims of the Debtors or their Estates and any Claims, Causes of Action, Objections, reservation of rights, or challenges to SDI, SDI's Liens, or SDI's Claims held by or granted to the Debtors or their Estates or the Liquidating Trustee and Liquidating Trust or the Creditors' Committee (including a "challenge" as such term is used in the *Final Order: (I) Approving Post-Petition Borrowing; (II) Authorizing Debtors To Enter Into Post-Petition Invoice Purchasing and Security Agreement With Alterna Capital Solutions, LLC; (III) Granting Security Interests and Super Priority Administrative Expense Claims; (IV) Authorizing The Use Of Cash Collateral; (V) Granting Adequate Protection; (VI) Modifying Automatic Stay; And (VII) Granting Related Relief entered by this Court* [Dkt. No. 270], and further including that the "challenge period" shall be terminated upon the Effective Date and any and all stipulations and releases shall become binding upon the Effective Date to the fullest extent set forth therein; and (ii) SDI and its Representatives, in their capacities as such, release the Debtors, the Estates, the Debtors' Representatives in their capacities as such, and the Liquidating Trustee, from any and all Claims, obligations, actions, suits, rights, debts, accounts, Causes of Action, remedies, avoidance actions, agreements, promises, damages, judgments, demands, defenses, and liabilities under any law or court ruling through the Effective Date arising out of, related to, and in connection with the prepetition Debtors, postpetition Debtors, and the Chapter 11 Cases.**

---

[1] Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to such terms in the Plan.

### B.    Covanta Releases

**As consideration for Covanta's consent to the treatment of Covanta's Claims in the Plan, Covanta's support of the Plan, and such other rights, obligations, and agreements by and among the Debtors, the Creditors' Committee and Covanta under the Plan, upon the Effective Date of the Plan, but excluding any rights or obligations arising under the Plan: (i) the Debtors, the Estates, the Debtors' Representatives in their capacities as such, and the Liquidating Trustee, release and forever waive any and all Claims, obligations, actions, suits, rights, debts, accounts, Causes of Action, remedies, avoidance actions, agreements, promises, damages, judgments, demands, defenses, and liabilities against Covanta and its Representatives in their capacities as such under any law or court ruling through the Effective Date, which release shall include, for avoidance of doubt, any and all derivative Claims of the Debtors or their Estates and any Claims, Causes of Action, Objections, reservation of rights, or challenges to Covanta or Covanta's Claims held by or granted to the Debtors or their Estates or the Liquidating Trustee and Liquidating Trust or the Creditors' Committee; and (ii) Covanta and its Representatives in their capacities as such release the Debtors, the Estates, the Debtors' Representatives in their capacities as such, and the Liquidating Trustee, from any and all Claims, obligations, actions, suits, rights, debts, accounts, Causes of Action, remedies, avoidance actions, agreements, promises, damages, judgments, demands, defenses, and liabilities under any law or court ruling through the Effective Date, *provided*, *however*, that nothing contained in the foregoing releases shall impair, abridge, modify, alter, or affect in any way the parties' rights pursuant to the Trust Agreement as set forth in the Plan.**

### C.    Non-Admission of Liability

It is understood and agreed by the Parties that the acceptance of the consideration referred to herein is in settlement of certain Claims and Causes of Action, and is not in any way to be considered an admission of fault or liability by any of the Parties.

### D.    Choice of Law

This Mutual Release Agreement shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Massachusetts, without giving effect to the principles of conflicts of law thereof.

### E.    Assistance of Counsel

The Parties each acknowledge that, with the assistance of their attorneys, they have carefully read or had read to them, and they understand the contents of, this Mutual Release Agreement.

*[intentionally left blank; signature page to follow]*

**SEEN AND AGREED TO BY:**

**THE DEBTORS**

Dated: _____

_____
By:
Title:

**THE LIQUIDATING TRUSTEE**

Dated: _____

_____
By:
Title:

**COVANTA**

Dated: _____

_____
By:
Title:

**Exhibit C**
**Contracts Schedule**

| Contract | Counterparty | Rejection Timing |
| --- | --- | --- |
| Sale of Alternative Energy Credits | ACT Commodities | Terminated in accordance with terms of the Agreement |
| Sale of Environmental Attributes | Direct Energy Business Marketing, LLC | Terminated in accordance with terms of Agreement |
| Sale of Alternative Energy Credits | Diversified Energy Specialists, Inc. | Terminated in accordance with terms of Agreement |
| Sale of Renewable Energy Credits | EDF Trading North America, LLC | Terminated in accordance with terms of Agreement |
| Energy Marketing Services | Re-Energy Biomass Operations, LLC | Terminated in accordance with terms of Agreement |
| Sale of Alternative Energy Credits | Dyenergy Marketing and Trade, LLC | Terminated in accordance with terms of Agreement |